WILKEN *v*. NEW YORK CENTRAL RAILROAD CO.

1. RAILROADS—COUPLERS—NEGLIGENCE — EVIDENCE — QUESTION FOR JURY—INSTRUCTIONS.

   In action against railroad company for injuries sustained by a former brakeman, then repairing a sidetrack as member of a section gang, because of claimed defective coupler, instruction that defendant was guilty of negligence as a matter of law if jury found cars in this one instance came together and refused to couple automatically as required by statute *held*, reversible error, such evidence rendering the question of disrepair one for consideration by the jury (45 USCA, § 1 *et seq.*).

2. TRIAL—INSTRUCTIONS—EVIDENCE—QUESTION FOR JURY.

   Giving an instruction which has the effect of stating to the jury that the mere failure of the device to operate is conclusive evidence of violation of statute relative to safety appliances is reversible error, notwithstanding further instruction submitting matter as question of fact (45 USCA, § 1 *et seq.*).

3. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—CARRIERS—INTERSTATE COMMERCE.

   The Federal employers' liability act applies to carriers engaged in interstate commerce and renders them liable in damages to any person suffering injury while he is employed by such carrier in such commerce (45 USCA, § 51).

4. SAME—FEDERAL EMPLOYERS' LIABILITY ACT—COURTS—JURISDICTION.

   Under the Federal employers' liability act the jurisdiction of a State supreme court is the same as the jurisdiction of the supreme court of the United States (45 USCA, § 51 *et seq.*).

5. SAME—FEDERAL EMPLOYERS' LIABILITY ACT—INTERSTATE COMMERCE—BURDEN OF PROOF.

   No recovery can be had under the Federal employers' liability act unless the employee was, at the time of the injury engaged in interstate transportation; the question of whether or not he was then so employed depending upon the facts of the particular case and the burden of proving such employment being on the injured employee (45 USCA, § 51 *et seq.*).

6. Appeal and Error — Requests to Charge — Interstate Commerce.

Although it was error for trial court not to submit as an issue of fact whether or not plaintiff, in action under Federal employers' liability. act, was engaged in interstate commerce at time of injury, it might well be held not ground for reversal in absence of request to so charge (45 USCA, § 51; Court Rule No. 37, § 9 [1933]).

Bushnell and Edward M. Sharpe, JJ., dissenting.

Appeal from Berrien; White (Charles E.), J. Submitted October 18, 1935. (Docket No. 118, Calendar No. 38,653.) Decided April 6, 1936.

Case by Almond Wilken against New York Central Railroad Company under the Federal employers' liability act for personal injuries sustained by reason of alleged negligence of defendant. Verdict and judgment for plaintiff. Defendant appeals. Reversed and new trial ordered.

*Stuart B. White,* for plaintiff.

*Gore, Harvey & Fisher (John J. Danhof* and *Harold H. McLean,* of counsel), for defendant.

North, C. J. I am unable to concur in the opinion of Mr. Justice Edward M. Sharpe conditionally affirming the judgment entered in the trial court because, it appears to me, the record discloses reversible error. As a ground of recovery plaintiff claimed that one of defendant's cars was equipped with a defective coupler and that this was the proximate cause of his injury. This question was submitted to the jury. The trial court charged:

"In other words if you are convinced from the evidence by a preponderance of evidence that this

first and second cut of cars came together as the plaintiff claims they came together and they refused to couple automatically, then I charge you *as a matter of law* that the defendant railroad company was negligent because this statute* makes it the absolute duty of the railroad company to have those cars equipped with couplers which will couple automatically.''

The only testimony in the record which tends to sustain plaintiff's claim that the coupler on the car in question was out of repair or in any way defective is that on this one particular occasion when the cars were shunted together the automatic coupler failed to work. At most this circumstance was only some evidence which in the light of the other facts disclosed might be considered by a jury in determining as a question of fact whether the coupling device was defective or out of repair. *St. Louis S. R. Co. of Texas* v. *Bounds* (Tex. Civ. App.), 244 S. W. 1099; same case (266 S. W. 171); *Meisenhelder* v. *Byram,* 182 Minn. 615 (233 N. W. 849). It did not justify the trial court in charging *"as a matter of law"* that the defendant was negligent in having failed to keep the car "equipped with couplers which will couple automatically.''

''The giving of an instruction which has the effect of stating to the jury that the mere failure of the device to operate is conclusive evidence of a violation of the act does not find authority in any of the cases.'' *Devaney* v. *Railway Co.,* 219 Cal. 487, 494 (27 Pac. [2d] 635).

Notwithstanding the court also stated to the jury that if they found as a fact that the coupler failed to work, the jury then had a right ''to infer from that fact alone that that coupler was not such a

* See Federal Safety Appliance Act, 45 USCA, § 1 *et seq.*—REPORTER.

coupler as the statute required" (thus making it an issue of fact), the instruction first above quoted constituted prejudicial error.

Appellant further claims the court erred in failing to submit to the jury as an issue of fact whether or not the plaintiff was engaged in interstate transportation at the time of the injury. Instead of submitting the issue as one of fact, the trial court assumed as a matter of law that plaintiff at the time of his injury was engaged in interstate commerce. We quote from appellant's reply brief:

"Whether or not plaintiff was engaged in interstate commerce should have been submitted to the jury. While it may be true that the work Wilken was engaged in before he began to move the cars was so closely related to interstate commerce as to be a part thereof, it was still a question for the jury whether or not he was still engaged in interstate commerce when he ceased working upon the track and assisted in moving cars which blocked the view of Elm street."

Plaintiff's right of recovery, if any, is asserted solely as being a right under the Federal employers' liability act. See title 45 USCA. Section 51 provides that the act applies to carriers engaged in interstate commerce and renders them liable in damages to "any person suffering injury *while he is employed by such carrier in such commerce.*"

"In deciding cases under the Federal employers' liability act the jurisdiction of this court is the same as the jurisdiction of the Supreme Court of the United States (*Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S. 472 [46 Sup. Ct. 564]; *Baltimore & Ohio Southwestern R. Co.* v. *Burtch,* 263 U. S. 540 [44 Sup. Ct. 165]; *Atlantic Coast Line R. Co.* v. *Burnette,* 239 U. S. 199 [36 Sup. Ct. 75]). In determining the

liability the question is not what the employee had been doing or what he expected to do, but what he was doing at the time he was injured (*Minneapolis & St. L. R. Co.* v. *Winters,* 242 U. S. 353 [37 Sup. Ct. 170, Ann. Cas. 1918B, 54]; *New York C. & H. R. R. Co.* v. *Carr,* 238 U. S. 260 [35 Sup. Ct. 780]; *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439 [35 Sup. Ct. 902]). No recovery can be had unless the employee was, at the time of his injury engaged in interstate transportation or in work so closely related thereto as to be practically a part of it (*Illinois Central R. Co.* v. *Peery,* 242 U. S. 292 [37 Sup. Ct. 122]; *Erie R. Co.* v. *Welsh,* 242 U. S. 303 [37 Sup. Ct. 116]; *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177 [36 Sup. Ct. 517]; *Shanks* v. *Railway Co.,* 239 U. S. 556 [36 Sup. Ct. 188, L. R. A. 1916C, 797]). Whether or not an employee is engaged in interstate commerce at the time of his injury depends upon the facts of the particular case. He may be so engaged at one moment and a few minutes later he may not be so engaged." *Spencer* v. *Railway Co.,* 336 Ill. 560 (168 N. E. 686).

We have held that a railroad switchman while engaged in a switching operation and moving cars not yet routed or designated for use in interstate commerce was not entitled to maintain an action under the Federal employers' liability act (45 USCA, § 51 *et seq.*); and also that the burden of proving that, at the time of the accident, he was employed in or incident to interstate commerce was upon the injured employee. *Rogers* v. *Railway Co.,* 246 Mich. 399. We are not in accord with appellee's contention "that the undisputed facts show the plaintiff" was engaged in interstate commerce. Under the record in the instant case it was error for the trial court to refuse to submit to the jury as an issue of fact the question of whether or not plaintiff

at the time he was injured was engaged in interstate commerce. A specific request to so charge does not appear to have been made by appellant. Therefore the court's failure to charge the jury in this particular might well be held not to be a ground for reversal. Court Rule No. 37, § 9 (1933); *Eger* v. *Helmar,* 272 Mich. 513. But the case must be reversed for other reasons and the point raised by this assignment of error is considered because of its importance in a new trial. Other assignments of error considered in appellant's brief are of such a character that they are not likely to occur in a subsequent trial. On that account we forego discussion.

Judgment is reversed, with costs to appellant. New trial ordered.

Fead, Wiest, Butzel, Potter, and Toy, JJ., concurred with North, C. J.

Edward M. Sharpe, J. (*dissenting*). Plaintiff, Almond Wilken, suffered injuries to his right hand on October 4, 1933, while in the employ of defendant, and on May 8, 1935, recovered a judgment of $18,000 in the circuit court of Berrien county. At the time of the injuries complained of, plaintiff was one of a section gang engaged in making some repairs to the side track on the north side of defendant's main line at Three Oaks, Michigan. Upon this occasion, five cars stood on the side track just west of the point where it crossed Elm street. The foreman of the section gang decided to move these cars and they had to be moved by two men who started them with pinch bars. Plaintiff was directed by the foreman to ride the first cut of cars and apply the brakes when the cars had moved the required

distance. He had some difficulty in stopping the cars owing to the condition of the brakes. The second cut of cars was then started towards the first cut. At this point, plaintiff claims that he was on the ground and saw the second cut of cars bump the first cut, come to an immediate stop without coupling, and push the first cut forward a distance of two or three feet. When the cars failed to couple, plaintiff stepped in between the cars for the purpose of adjusting the apparatus that couples the cars; at this instant the cinder car, which was some 40 feet east of the second cut, was pushed against the second cut and plaintiff's hand was caught between the coupling and severely injured.

It is the claim of plaintiff that the foreman in charge of the gang of men instructed plaintiff to go through these cars and see that the brakes were all released and set the brakes on the first cut of cars when they should arrive at the proper place; that he (plaintiff) had formerly been a brakeman for the Michigan Central Railroad and was familiar with the duties of a brakeman, that this fact was known to the foreman who told him to tend the brakes and do whatever was necessary; that in operating the brakes he found them defective to the extent that they could not be set properly; that he got off of the car and started to the east and as he did so the second cut of cars was started towards the west and that as these cars came together the second set of cars stopped while the first set of cars moved forward two or three feet, that he looked in to determine why these cars had not coupled automatically and discovered that the knuckle pin was up out of place, and then noticing that the cars were not in motion he went in between the cars to adjust the

coupling, and that as he was doing so, the workmen in charge of the cinder car rolled that car to the west striking the second cut of cars, forcing them down upon the first cut of cars and that they came together while he (plaintiff) was adjusting the coupling pin, resulting in severe injuries to his hand. It is the further claim of plaintiff that while he received no specific instructions to adjust the coupling, yet from his experience as a brakeman and switchman he was familiar with their duties; that it is the duty of a switchman never to leave any cars on a siding uncoupled; and having discovered that the brakes were defective, he determined that it was necessary that the cars be coupled in order that they might not roll to the west and that discovering that the coupling did not work it was his duty to adjust it.

The first error charged by the defendant is that the trial court failed to charge the jury upon the question of whether or not plaintiff was, at the time of the injury, engaged in interstate transportation, it being conceded that the defendant company was so engaged at the time of plaintiff's injury.

In the case at bar there appears to be no dispute that plaintiff, along with several others, was engaged in repairing a siding owned and used by defendant railroad company.

In *Carter* v. *Railroad Co.,* 307 Mo. 595 (271 S. W. 358), the plaintiff had been engaged in spreading cinders and was about to resume work after lunch hour when he was struck and injured by a car, which was collided with by other cars and upon which the coupling failed to "make" by the impact. In passing upon the question of interstate commerce, the court said:

"The defendant was engaged in interstate com-merce, and its roadbed and tracks were instrumental-ities used by it in that commerce.   There can be no question therefore but that plaintiff while spreading cinders, a work having for its purpose the repair, maintenance and upkeep of defendant's roadbed and tracks, was employed in interstate commerce (*Peder-sen* v. *Railroad Co.*, 229 U. S. 146 [33 Sup. Ct. 648, Ann. Cas. 1914 C, 153]).   The character of the work just mentioned was the only kind plaintiff was em-ployed to do, so that if he was engaged in the mas-ter's service at all at the time he was injured he was then employed in interstate commerce."

See, also, *Pedersen* v. *Railroad Co.*, 229 U. S. 146 (33 Sup. Ct. 648, Ann. Cas. 1914 C, 153), and annota-tion in 49 A. L. R. 1339.

The undisputed facts in this case show that plain-tiff as well as defendant was engaged in interstate commerce and as such plaintiff could claim the bene-fit of the Federal safety appliance act (45 USCA, §§ 1–16).   Had the trial court charged the jury with reference to this act, he would have instructed them that both parties, at the time of the injury, were engaged in interstate commerce and that they could not consider any evidence bearing upon the claim that plaintiff was guilty of contributory negligence.   However, we fail to see where the omission of such an instruction was harmful to defendant's cause.

It is next contended that the trial court erred in refusing to charge that defective brakes on the first cut of cars had no causal connection with the acci-dent and in voluntarily charging that defective brakes could be considered.   The charge of the court upon this matter was as follows:

"You have a right, of course, to take into con-sideration also the provision of the statute which

provides that the railroad company owed a duty to keep its cars equipped with efficient brakes as bearing upon the question of what the plaintiff did in the premises and what he thought it was his duty to do not as a direct cause or negligent act which in and of itself was the cause of the plaintiff's injury, but as bearing upon the question of whether or not at that time he was acting within the scope of his employment and what he thought in the exercise of the judgment of an ordinarily prudent man it was necessary for him to do under the conditions."

In this charge the court refers to the duty of defendant to maintain efficient brakes but limits the jury's consideration of the condition of the brakes to what plaintiff did or thought he ought to do, and this only as bearing upon the question of whether or not plaintiff was acting within the scope of his employment. This charge did not instruct the jury that they could consider the defective hand brakes as having a causal connection with plaintiff's injury.

Counsel for defendant also claim error in the following charge of the court:

"In other words if you are convinced from the evidence by a preponderance of evidence that this first and second cut of cars came together as the plaintiff claims they came together and they refused to couple automatically, then I charge you as a matter of law that the defendant railroad company was negligent because this statute makes it the absolute duty of the railroad company to have those cars equipped with couplers which will couple automatically."

But to this charge should be added the following as given by the trial court:

"And if those cars came together as the plaintiff claims they did when they first came down there,

when the second cut first came down and the coupler refused to work, then that in itself, members of the jury, was evidence of negligence on the part of the defendant.   *   *   *   As I have said to you, the plaintiff claims that the first and second cut of cars came together.   That the coupler refused to work. If you find that as a matter of fact from the evidence in this case, then you have a right to infer from that fact alone that that coupler was not such a coupler as the statute required the defendant to maintain on that car.''

In the consideration of this phase of the case, we find that Federal statutes are involved and in such cases the rule is as stated in *Howe* v. *Railroad Co.*, 236 Mich. 577, that in the enforcement of Federal statutes in the State courts, decisions of Federal courts are controlling.

*St. Louis I. M. & S. R. Co.* v. *Taylor*, 210 U. S. 281 (28 Sup. Ct. 616), involved the construction of the safety appliance act, before that part of the law was enacted requiring automatic couplings.   The court said (294):

''In deciding the questions thus raised, upon which the courts have differed (*St. Louis & S. F. R. Co.* v. *Delk*, 86 C. C. A. 95 [158 Fed. 931, 14 Ann. Cas. 233]), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employee reasonably safe tools, machinery and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible.   In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant.   The congress, not satisfied with the common-law duty, and its resulting liability, has prescribed and defined the duty by statute.   We have nothing to do but to ascertain and declare the meaning of a few simple words

in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

We think the trial court was correct in his interpretation of the Federal statute. It seems to us that the statute places the burden upon such railroad companies to keep their apparatus in order at all times and that if the coupling fails to operate automatically it is not such a coupling as congress intended. In the charge of the court we find that the court stated to the jury that if the cars came together as testified to by plaintiff and the coupling failed to make by that impact, then they could infer from this fact that the coupling was defective. We find no error in this charge.

We have examined other errors complained of by defendant, but in our opinion they are not prejudicial to the rights of the defendant. However, we are not in accord with the amount of the verdict rendered by the jury.

In this cause plaintiff's hand was caught between the bumpers, no bones were fractured, but the hand has lost 50 per cent. of its efficiency and is permanently injured. At the time of the injury, plaintiff was 26 years of age and in good physical condition

and earning $3.16 per day as an extra switchman or member of the maintenance way gang, and after the injury plaintiff was employed by defendant company and received $2.97 per day.  In 1934, he was again employed by defendant company and received $4.97 per eight-hour day and at the time of the trial was employed at the Kawneer Manufacturing Company at 40 cents an hour unpacking boxes that contained aluminum.  Plaintiff also claims that in addition to loss of wages occasioned by the injury, he also lost considerable sums from his avocation as a prize fighter.  The record shows that upon one occasion plaintiff received $1,200 for appearing in a main bout in Fort Wayne, Indiana, and that his last fight was in February, 1933, in which he paid his own training and traveling expenses.  These facts indicate that plaintiff was over the crest as a prize fighter at the time of his injury and such fact should be taken into consideration in awarding damages. When we consider the earning power of plaintiff prior to the accident as shown by the record and his present earnings, we are constrained to hold that the amount of the verdict was excessive.

If the plaintiff will, within 30 days after the filing of this opinion, file a remittitur of all in excess of $7,500, the judgment should stand affirmed as to that amount; otherwise a new trial should be granted. Plaintiff should recover costs.

BUSHNELL, J., concurred with EDWARD M. SHARPE, J.