# THOMAS HENRY ROSS v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.[1]

February 16, 1940.

No. 32,213.

[1]Reported in 290 N. W. 566.

158

*Clarence J. Hartley, Dennis F. Donovan,* and *Elmer F. Blu,* for appellant.

*Lewis, Grannis & Underhill,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying defendant's blended motion for judgment or for a new trial. The case was here before and was sent back for retrial. 203 Minn. 312, 281 N. W. 76, 271. The second trial resulted in a verdict for plaintiff for $18,500. The trial court, on defendant's motion, granted a new trial but conditioned it upon failure of plaintiff to accept a reduction of the verdict to the sum of $15,000. Plaintiff accepted the reduction.

The facts were fully stated by Mr. Justice Loring in his opinion on the former appeal. A brief review of those facts which are essential to an understanding of the issues now raised will suffice for present purposes.

On June 30, 1936, a crew employed by defendant consisting of an engineer, a fireman, and three switchmen, one of whom was plaintiff, were switching cars on defendant's tracks. Two cars in charge of plaintiff were started toward a sidetrack, but the air brakes thereon stopped the cars before they reached the intended destination. Plaintiff and the foreman proceeded to "bleed the air" on these cars. At this time it became necessary to run the

entire switch train (an engine and about 18 cars) down the track upon which the two cars previously mentioned were stalled. The switch train was moved against the cars and, without stopping, it shoved them down the switch track. Ross caught the foremost car. The switch train stopped, but, there having been a failure to effect a coupling, the two cars against which it had shoved continued to move down the track, which was at a grade of about two per cent, attaining a speed variously estimated as from 20 to 40 miles an hour. The uncontrolled cars collided with others standing farther down the track. Defendant either jumped before or was thrown off by the impact. He suffered injuries the character of which was in question and subsequently became insane.

It is here urged (1) that the verdict was not justified by the evidence and is contrary to law because (a) defendant did not violate the federal safety appliance act, (b) apart from the safety appliance act, defendant was not negligent, (c) assuming defendant was negligent, such negligence was not the proximate cause of plaintiff's injuries, and (d) plaintiff's insanity was not caused by the injuries suffered by him at the time of the accident here involved; (2) that the verdict should be vacated and set aside because of specified errors of law occurring at the trial; (3) that the verdict should be set aside because of misconduct on the part of plaintiff's counsel; and (4) that the verdict is excessive as the result of passion and prejudice on the part of the jury.

1(a) Appellant argues that there was no violation of the federal safety appliance act because it was neither the intent of the crew nor was it necessary to effect a coupling with the cars in charge of plaintiff and because the evidence preponderates against the claim that the couplers were defective within the meaning of the act. On the former appeal of this case, it was said (203 Minn. 318, 281 N. W. 80): "There is no dispute that the coupler failed to couple by impact. Even a single failure was sufficient to support the jury's verdict." We do not think the present record makes necessary a change of view on this issue. Appel-

lant insists that the testimony shows that no coupling was intended or necessary and implies that in this respect the present record differs from that before us on the other appeal. We have examined the record and conclude that the evidence of breach of duty imposed by the safety appliance act remains substantially the same as that considered on the former appeal. The holding that such evidence was sufficient to take the case to the jury on this question will not be now changed. We see nothing in the cases cited by appellant in this regard (Meisenhelder v. Byram, 178 Minn. 417, 227 N. W. 426; Meisenhelder v. Byram, 182 Minn. 615, 233 N. W. 849, 236 N. W. 195; Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 39 S. Ct. 355, 63 L. ed. 757; Wilken v. New York Cent. R. Co. 275 Mich. 159, 266 N. W. 306) contrary to the position here taken.

(b) Whether or not defendant was negligent apart from the federal safety appliance act was a question for the jury. There was ample evidence from which it could conclude that defendant's employes knew or should have known that if the switch engine did not couple with the cars on which plaintiff was working these cars would continue down the track at a considerable rate of speed when the switch train stopped; that plaintiff would jump on and ride the cars on which he was working; that a collision with cars standing farther down the track would follow and that plaintiff might be injured. This danger could have been avoided by the simple expedient of testing the couplers after contact between the switch train and the two stalled cars was made. Failure to make this test was an omission which the jury could reasonably have found to be negligence. In addition, there was evidence of a custom and practice requiring tests of couplers after contact as in the present case. More detailed discussion of this evidence will later appear. For the present it is sufficient to say that this evidence, while not essential to a finding of negligence, justified such a finding.

(c) Assuming negligence on the part of defendant, appellant contends that the jury could not reasonably find that such negli-

gence was the proximate cause of the injuries sustained by plaintiff on June 30, 1936. It is argued that plaintiff assumed the risk; that he was contributorily negligent; and that the injuries resulted from an independent intervening cause. These contentions were disposed of in plaintiff's favor on the former appeal. Ross v. D. M. & I. R. Ry. Co. 203 Minn. 312, 318, 281 N. W. 76, 271. No such change of testimony or addition to the evidence has been found which would justify us in altering our previous holding on these questions.

(d) Determination of whether or not the injuries suffered by plaintiff on June 30, 1936, caused his present condition requires a somewhat detailed examination of the record for evidence concerning the nature of the injuries, changes in plaintiff which followed the injuries, and the causal relation between the injuries and plaintiff's mental condition at the time of the trial. While one of defendant's witnesses claimed that plaintiff jumped from the car on which he was riding before the collision, it was the latter's claim that he was thrown from the car when the collision occurred. One of the switchmen, W. M. Conley, testified that plaintiff was hanging on the ladder of the car when it hit the others. The cars met with such force that they were thrown off center. The roadbed on which plaintiff fell was hard. A cloud of dust arose which enveloped plaintiff so that he could not be seen. Ross testified that he lost consciousness when he hit the roadbed and that when he regained his senses one of his fellow workers was but a few cars away. He further testified that Swanson was about 22 cars away from the point of collision when it occurred. From this the jury could infer that plaintiff was unconscious for the time required by Swanson to travel some 400 feet on foot. Defendant's witness estimated the time when plaintiff could not be seen because of the dust at about ten seconds and testified that when seen he was apparently conscious. Plaintiff testified that on getting to his feet he was dizzy and felt a pounding sensation in his head. A lump swelled up on his temple which plaintiff's wife and daughter testified they observed

when he came home the day of the accident. At the time of the trial a scar appeared on plaintiff's head at about the place where the swelling was said to have been. Plaintiff continued to work until about 5:30 p. m. of the day of the accident, which occurred at about 11 a. m., and for about a week thereafter, when, at his request, he was transferred to easier positions, where he worked until the first part of the following August. At about the same time plaintiff was afflicted with fainting spells and had gastric hemorrhages which made it necessary that he be taken to the hospital. Shortly thereafter he was committed because of insanity.

It is undisputed that before the accident in question plaintiff appeared to be normal in all respects. One witness testified as to an incident which illustrated his physical condition. Russell Gran, who moved into plaintiff's house in the spring of 1936, testified that on about April 10 of that year he noticed plaintiff removing storm windows from the second story of the house and described how this was done by plaintiff, who crawled up about 40 feet on a ladder and removed the storm windows without assistance and without experiencing any apparent discomfort as a result. Shortly after the accident he underwent marked physical and mental changes. Numerous witnesses testified that he became profane in his language and irritable of disposition; that his hands trembled so that he had difficulty eating; that he became untidy in appearance. He purchased a car, furniture, and clothes which he could not afford and did not need and in other ways evidenced lack of judgment. These were the changes which finally made it necessary that he be committed.

Medical experts were called by both sides for testimony concerning the question of whether or not there was a causal connection between the injuries suffered by plaintiff on June 30, 1936, and his subsequent insanity. The theory of those called by plaintiff was that Ross's mental condition was due to the replacement of brain cells by scar tissue resulting because of tiny hemorrhages in the frontal lobe of the brain caused by an injury

to the head such as plaintiff claimed he suffered as a consequence of the accident. The theory most consistently advanced by defendant's witnesses to explain plaintiff's condition was that it was caused by physical defects incident to old age particularly arteriosclerosis, a failing heart, and accompanying high blood pressure. While plaintiff's witnesses conceded that his condition could be thus caused, they were of the opinion that it was not and questioned the findings of failing heart and unduly high blood pressure. Considered as a whole, the medical testimony raised a question of fact for the jury. The weakness of plaintiff's evidence in this respect which appeared in the record considered on the former appeal cannot, on the record now before us, be said to exist. The medical testimony was made more complete in regard to plaintiff's theory of causation, and the possibility that the condition from which he suffers was caused by other factors was more adequately negatived. X-rays which were admitted in evidence and which plaintiff's experts said disclosed signs of a fracture also added strength to his case.

2. Of the alleged errors occurring during the course of the trial which appellant claims to be grounds for a new trial, the most important concerns the admission by the court of certain testimony relative to prudent railroad practice under the circumstances preceding the accident here involved. C. H. Foster, called as a witness by plaintiff, testified that he had been employed by defendant railroad from May, 1910, to February, 1924, as a brakeman and conductor and that he was, at the time of the trial, employed by the Great Northern as a yard foreman. He further testified, over objections made by defendant but overruled by the trial court, that according to standards of proper and prudent railroad operation, the switch train should not have been moved against the stalled cars until they were secured and that the cars should not have been shoved until the coupling was tested. To this testimony we see no valid objection. It related to railroad practice generally, and as to that the witness appeared clearly competent to testify. It did not relate to custom and practice on

defendant's road and so was not objectionable within the principle laid down in the decision on the previous appeal. Other assignments of error raised by appellant in this connection have either been disposed of by the prior appeal or require no discussion.

3. While the argument of plaintiff's counsel was at all times vigorous and, as was conceded upon oral argument, was sometimes beyond the issues of the case, we do not think that it so exceeded the permissible limits as to justify granting another trial.

4. Finally it is urged that the verdict of the jury should be vacated because of excessive damages given under the influence of passion and prejudice. In our opinion the original verdict of the jury was not excessive. Plaintiff's loss of earnings alone exceeded the amount which the jury allowed as damages. The order of the trial court in granting a new trial on the condition that plaintiff's consent to a reduced verdict would make it inoperative does, however, raise a unique and difficult problem. In Moquin v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 56, 64, 231 N. W. 829, this court held that a verdict of $27,500 was excessive because of passion and prejudice and granted a new trial unless plaintiff consented to a reduction of the verdict to $22,500. Plaintiff consented to the reduction. Appeal was taken to the United States Supreme Court, which reversed this court and granted a new trial, holding that in actions under the federal employers' liability act a verdict cannot be permitted to stand which is found to be in any degree the result of passion and prejudice. M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501, 75 L. ed. 1243. The present action was based, in part at least, on the federal safety appliance act. If the verdict of the jury was in any degree based upon passion and prejudice a new trial should have been ordered as was held in the Moquin case, and the plaintiff should not have been permitted to nullify the order for a new trial by consenting to a reduction of the verdict. The question, therefore, is: Did the trial court find that the verdict was in any degree motivated by passion and prejudice? If we are free to

rely on the memorandum of the trial court, this question can be given a negative answer because in its memorandum the trial court says:

"In view of the fact, * * * that he will be getting his estimated future earnings in a lump sum instead of at intervals through the remaining years that he probably would have been employed, I feel that the verdict is somewhat large and should be reduced to $15,000. However, there isn't any indication that the jury was actuated by any feeling of passion or prejudice or sympathy in the rendition of their verdict."

The memorandum was filed with the order but was not expressly made a part thereof. Consequently we are confronted with the rule laid down by this court in a number of cases, that while a memorandum not expressly made a part of the order may be referred to for the purpose of throwing light upon or explaining a decision, such memorandum may not be referred to for the purpose of impeaching, contradicting, or overcoming express findings or conclusions necessarily following from the decision. Holland v. G. N. Ry. Co. 93 Minn. 373, 101 N. W. 608; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108; Alton v. C. M. & St. P. Ry. Co. 107 Minn. 457, 120 N. W. 749; Pinkerton v. Wisconsin Steel Co. 109 Minn. 117, 123 N. W. 60. The Alton case involved a personal injury action. Plaintiff recovered a $3,450 verdict. He thereafter moved for a new trial on two grounds: (1) Insufficient damages appearing to have been given under the influence of passion and prejudice; and (2) that the verdict was not justified by the evidence. The trial court granted a new trial and stated in its order that the motion was made on the ground of insufficient and inadequate damages. Attached to the order but not made a part thereof was a memorandum stating that there was nothing to indicate passion or prejudice and that the court did not find the existence of any passion or prejudice in the verdict returned. Answering the contention of defendant that the memorandum of the trial court should be considered with the order, this court said [107 Minn. 459, 120 N. W. 750]:

"If it be conceded, for the purpose of this appeal only, that in a personal injury case, where the evidence shows that the damages awarded are not reasonably compensatory, the trial court is powerless to correct the injustice by granting a new trial, unless it appears that the verdict was given under the influence of passion and prejudice, we are nevertheless of the opinion that the order granting a new trial in this case must be affirmed; for the order was a discretionary one, unless the memorandum is to be taken as an essential part of the order. The general rule is that a memorandum of the trial judge is no part of the order or finding to which it is attached, unless expressly made a part thereof; but, whether attached or not, it may be referred to where the order or finding is not explicit in itself for the purpose of interpreting the meaning thereof. The memorandum, however, unless expressly made a part thereof, may not be referred to for the purpose of impeaching the order or finding or overcoming the effect thereof. Johnson v. Johnson, 92 Minn. 167, 99 N. W. 803; Holland v. Great Northern Ry. Co. 93 Minn. 373, 101 N. W. 608; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108.

"The order granting the new trial in this case is clear and positive, and its correctness must be determined without reference to the memorandum, which is no part of it. The evidence justifies the order granting a new trial."

See also Marthaler M. & E. Co. v. Meyers, 173 Minn. 606, 218 N. W. 127, and cited cases.

The Pinkerton case, 109 Minn. 117, 123 N. W. 60, involved practically the same question, but there the motion for a new trial was made exclusively on the ground of passion and prejudice. The order granting the new trial was responsive to the one ground stated in the motion. The court's memorandum commended the jury's verdict as a fair and impartial one but did not state that there was an absence of passion or prejudice. In these cases, therefore, the ground upon which the order of the trial court was based appeared clearly from the order considered in light of the motion. In the case now before us the motion was based on five

grounds: (1) That the verdict of the jury was not justified by the evidence; (2) that the verdict is contrary to law; (3) errors of law arising out of rulings of the trial court to which exception was duly taken; (4) misconduct of counsel; and (5) excessive damages appearing to have been given under the influence of passion and prejudice. The order is silent as to the ground upon which it was granted. We cannot by merely examining the order in light of the motion determine the reason which prompted the trial court to grant a new trial and attach thereto a condition by which the order could be rendered inoperative. Thus is the case now before us to be distinguished from the cases previously cited which hold that a memorandum not expressly made a part of an order cannot be referred to. We are necessarily in doubt as to the ground upon which the motion was granted and consequently the memorandum may properly be examined for the purpose of explaining the order appealed from or, as Mr. Justice Lovely said in Johnson v. Johnson, 92 Minn. 167, 170, 99 N. W. 803, for the purpose of illuminating and ascertaining the controlling reason for the trial court's decision. The memorandum makes it clear that the trial court found no passion or prejudice on the part of the jury, and in this it was sustained by the record.

Assuming that the trial court had a right to make the order which it did make if, but only if, there was passion and prejudice on the part of the jury, we do not think that appellant was prejudiced by the order as made. It received a reduction of $3,500 to which it was not entitled. This is so because the record does not sustain a finding of passion and prejudice. There was ample evidence upon which the jury could find for the amount which it did or for a larger sum. It was held in Mohr v. Williams, 95 Minn. 261, 266, 104 N. W. 12, 1 L.R.A. (N.S.) 439, 111 A. S. R. 462, 5 Ann. Cas. 303, that in actions for unliquidated damages such as actions for personal injuries, where the plaintiff's damages cannot be computed by mathematical calculation, the court will not interfere with the verdict unless the damages awarded

appear clearly to be excessive or inadequate and to have been given under the influence of passion and prejudice. Later cases, however, have indicated that it does not follow as a matter of law that damages are considered excessive by reason of passion and prejudice when reduced by the trial court. In Goss v. Goss, 102 Minn. 346, 113 N. W. 690, 691, the plaintiff had recovered a verdict for $4,000 damages on account of personal injuries due to the negligence of defendants. The trial court denied the defendants' motion for a new trial on condition that the plaintiff consent to reduce the verdict to $3,000. He so consented, and the defendants appealed from the order. In disposing of the appeal this court said [102 Minn. 348]:

"It is, * * *, claimed by the defendants that, the trial court having reduced the verdict $1,000, it must have found that the damages awarded were excessive; that this shows such passion and prejudice on the part of the jury that it was error for the court to let the verdict stand for any amount whatever, * * *. It by no means follows, from the fact that the trial court was of the opinion that the damages were excessive, that they were awarded as the result of passion or prejudice, or that the trial court so found. The damages may have been excessive; but it cannot be inferred therefrom that they were the result of passion or prejudice, unless they were so large, when compared with what the evidence indicates that they ought to have been, that the court must conclude that they were not awarded upon any fair and impartial consideration of the evidence as to the damages."

This decision was approved in Birdsall v. Duluth-Superior Transit Co. 197 Minn. 411, 267 N. W. 363.

We therefore conclude that in accordance with the rule outlined in Johnson v. Johnson, 92 Minn. 167, 99 N. W. 803, the memorandum of the trial court may be examined for the purpose of ascertaining the controlling reason for the trial court's action in reducing the verdict. The memorandum clearly indicates that the trial court found no passion or prejudice. The record fully justifies such a finding. Having reached that conclusion, we are

not concerned with the reason for the reduction. Defendant, having profited by it, is not in a position to complain. The case is not controlled by M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, for there this court expressly found the existence of passion and prejudice. Here we find that the trial court was right in concluding that there was no passion or prejudice.

We have considered the arguments of defendant which we have discussed and others which we do not consider sufficiently important to merit special discussion in this opinion. Finding no reversible error, the trial court is affirmed.

Affirmed.

STONE, JUSTICE, and LORING, JUSTICE (dissenting).

This was an action for personal injuries based in part upon the federal safety appliance act and therefore controlled to that extent by federal decisions. It resulted in a verdict for $18,500. The defendant moved for judgment or, if that were denied, for a new trial on five grounds, namely: (1) The verdict was not justified by the evidence; (2) it was contrary to law; (3) errors of law; (4) misconduct of counsel; (5) excessive damages appearing to have been given under the influence of passion or prejudice. The trial court granted a new trial unless the plaintiff would accept a reduction of the verdict to $15,000, but stated in a memorandum, not made a part of the order, that there was no indication of passion, prejudice, or sympathy. The plaintiff made no motion to correct the court's action but accepted the reduction. Defendant has appealed and has assigned the same grounds here. Under the first two grounds it urges that no verdict in favor of plaintiff should stand. We think that this is the only result that could properly be urged under those grounds and that it could not properly be urged that the verdict was too large or should be reduced. Mohr v. Williams, 95 Minn. 261, 266, 267, 104 N. W. 12, 13, 1 L.R.A.(N.S.) 439, 111 A. S. R. 462, 5 Ann. Cas. 303. In that case the court, speaking through Mr. Justice Brown, said:

"Considerable confusion has existed with reference to the proper rule guiding this court in reviewing orders of this kind ever since the decision in Nelson v. Village of West Duluth, 55 Minn. 497, 57 N. W. 149, wherein it was said that the rule of Hicks v. Stone, 13 Minn. 398 (434) did not apply. Several decisions involving the same question have since been filed, and the bar is apparently in some doubt as to the true rule upon the subject.

"We are not disposed to review the former decisions of the court, but, for future guidance, take this occasion to say (that there may be no further controversy in the matter) that in actions to recover unliquidated damages, *such as actions for personal injuries,* libel, and slander, and similar actions, where the plaintiff's damages cannot be computed by mathematical calculation, *and are not susceptible to proof by opinion evidence, and are within the discretion of the jury, the motion for new trial on the ground of excessive or inadequate damages should be made under the fourth subdivision of section 5398, G. S. 1894;* and in such cases the court will not interfere with the verdict unless the damages awarded appear clearly to be excessive or inadequate, as the case may be, and to have been given under the influence of passion or prejudice. On the other hand, in all actions, whether sounding in tort or contract, where the amount of damages depends upon opinion evidence, as the value of property converted or destroyed, the nature and extent of injuries to person or property, the motion for new trial should be made under the fifth subdivision of the statute referred to; and in cases of doubt, or where both elements of damages are involved, under both subdivisions. State v. Shevlin-Carpenter Co. 66 Minn. 217, 68 N. W. 973.

"But in any case, whether a new trial upon the ground of excessive or inadequate damages should be granted or refused, or whether the verdict should be reduced, rests in the sound judicial discretion of the trial court (Craig v. Cook, 28 Minn. 232, 9 N. W. 712; Pratt v. Pioneer Press Co. 32 Minn. 217, 18 N. W. 836, 20 N. W. 87), in reviewing which this court will be guided by the

general rule applicable to other discretionary orders." (Italics supplied.)

This court in Nelson v. Village of West Duluth, 55 Minn. 497, 500, 57 N. W. 149, speaking through Chief Justice Gilfillan, said:

"In an action in tort, the objection that the damages are excessive or inadequate, as a ground of motion for a new trial, comes under subdivision 4, and not subdivision 5, of 1878 G. S. ch. 66, § 253, as amended, Laws 1891, ch. 80, which was not called to our attention in Henderson v. St. Paul & Duluth R. Co. 52 Minn. 479, (55 N. W. 53). That subdivision reads: 'Excessive or inadequate or insufficient damages, appearing to have been given under the influence of passion or prejudice.' Under that subdivision, it is not enough that the damages may, in the opinion of the court, be too large or too small; it must appear that they were given under the influence of passion or prejudice. *Ordinarily, this would appear from the verdict being so large or so small, when compared with what the evidence indicates it ought to be, that the court must conclude that the jury did not arrive at the amount upon a fair and impartial consideration of the evidence."* (Italics supplied.)

By including all tort cases the court probably went beyond the rule later laid down, but it recognized the principle we here deem controlling.

Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, was decided and this rule laid down after much confusion had arisen in the minds of the profession as to the proper rule guiding this court in reviewing orders made upon motions for new trial where the question of excessive damages was involved. The case was shortly followed by the case of English v. M. & St. P. Suburban Ry. Co. 96 Minn. 213, 104 N. W. 886, where this court refused to review the question of excessive damages where the error assigned was that the verdict was not justified by the evidence. In the recent case of Wright v. Engelbert, 193 Minn. 509, 259 N. W. 75, recovery was sought for death by wrongful act. The plaintiff sought a new trial on the ground of inadequate damages appearing to have

been given under the influence of passion or prejudice and that the verdict was not justified by the evidence and was contrary to law. This court followed the rule in Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, and in discussing the amount of the verdict refused to consider the question as raised by the assignment that the verdict was not justified by the evidence and was contrary to law. The principle appears inherent in the character of the damages recoverable in this class of cases. Such damages must rest in the discretion of the jury and are not susceptible of calculation. It is true that in a subsequent case, Kemerer v. Mock, 198 Minn. 316, 269 N. W. 832, this court, without any discussion of the rule, reduced a personal injury verdict from $5,000 to $3,500 although it saw nothing in the record indicating passion or prejudice. The writers of this dissent joined in that opinion, and we take our share of responsibility for it, but we do not think that the rule there tacitly assumed should be followed, for it leads to the same confusion in the minds of the profession that existed prior to the decision in the Mohr case.

The case of Goss v. Goss, 102 Minn. 346, 348, 113 N. W. 690, 691, cited in the majority opinion, was one where the question involved was whether or not under the state practice a new trial might be ordered conditionally in order to effect a reduction of the verdict. What is quoted from that opinion in Birdsall v. Duluth-Superior Transit Co. 197 Minn. 411, 267 N. W. 363, is separated from its context and if read together with the rest of the opinion shows clearly that it means no more than that an excessive verdict in this kind of a case is not ground for a new trial unless so excessive as to indicate passion or prejudice. The Birdsall case itself does not lay down a different rule. We think we should adhere to the rule announced in the Mohr case, 95 Minn. 261, 104 N. W. 12.

In the case at bar the trial court attached to the order granting a new trial conditionally a memorandum not made a part of its order in which it was stated:

"However there isn't any indication that the jury was actuated by a feeling of passion or prejudice or sympathy in the rendition of their verdict."

Where, as here, the size of the verdict could only be properly considered under the fifth ground of the motion, the question now under consideration stands as if the fifth ground were the only ground stated in the motion. At any rate, the memorandum, not being made a part of the order, cannot be resorted to for the purpose of impeaching the order nor can it be used for the purpose of interpreting a perfectly plain order which needs no interpretation. It cannot be resorted to for the purpose of creating an ambiguity in the order which requires explanation or interpretation. Alton v. C. M. & St. P. Ry. Co. 107 Minn. 457, 120 N. W. 749; Pinkerton v. Wisconsin Steel Co. 109 Minn. 117, 123 N. W. 60. It therefore stands judicially determined by the trial court that passion and prejudice influenced the verdict, and that question is not properly here for review.

We come then to the effect of the federal rule announced in M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, 521, 51 S. Ct. 501, 502, 75 L. ed. 1243, which held that if passion or prejudice enter into the result in any degree the verdict cannot be permitted to stand. The court said, speaking through Mr. Justice Roberts:

"Obviously such means may be quite as effective to beget a wholly wrong verdict as to produce an excessive one. A litigant gaining a verdict thereby will not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent."

The rule is peculiarly applicable in a case like this where the question of defendant's liability is a close one due to the fact that connection as cause between the plaintiff's fall and his present condition is so much in doubt and where the defendant's evidence was so persuasive as to convince the trial court that the plaintiff's condition was due to arteriosclerosis.

It cannot be said that under the federal rule, which is much more logical and more just than our own, that the trial court's error was without prejudice to defendant. If passion or prejudice influenced the verdict, then defendant was entitled to a new trial on all issues. It might as well be said that there would be no prejudice where the court specifically stated in the order that he found passion or prejudice.

We are not in accord with the statement in the principal opinion that there is nothing in the record which indicates passion or prejudice. As in the first trial, counsel was careful to bring out the fact that plaintiff's wife was in poor health. He also endeavored in his closing argument to invoke action by the employes' grievance committee against one of defendant's material witnesses, obviously for the purpose of arousing prejudice in the minds of the jury. We do not think a court's finding that there was prejudice could be upset on this record and verdict. The situation was such that the sympathies of the jury were likely to be aroused and the effect upon the jury's verdict was commented upon in the previous opinion in this case by a unanimous court. Passion or the sympathy which results in prejudice is not apt to be disclosed by the cold record, and usually, as this court said in Nelson v. Village of West Duluth, 55 Minn. 497, 57 N. W. 149, the size of the verdict is the best indication of whether or not it was the result of a fair and impartial trial.

We are not here dealing with technicalities. This is no mere question of whether a memorandum may be resorted to for impeachment of an order. The principles announced in the Mohr case, 95 Minn. 261, 104 N. W. 12, are fundamental in the nature of causes of action for personal injuries and of the power and duty of trial courts. It is fundamental that a verdict in such a case where the damages lie in the judicially controlled discretion of the jury may not be disturbed for excessiveness unless the verdict is the result of passion or prejudice. The amount of the verdict under the rule in the Mohr case may not be questioned on any other ground. Trial courts should understand that they

may not, even under the state practice, grant a new trial conditionally for the purpose of reducing an excessive verdict and then in a memorandum commend the jury for its fairness and impartiality. They cannot substitute their judgment for that of the jury merely because they would have arrived at a different amount of damages. It is important that there should be clear thinking by trial courts and counsel upon these fundamental principles and their effect on the powers and duties of courts, but this cannot be expected if this court does not recognize and adhere to those principles.

We think a new trial should be granted.