FRIEDA KUGLING v. J. R. WILLIAMSON.[1]

May 5, 1950.

No. 35,114.

[1]Reported in 42 N. W. (2d) 534.

*L. S. Miller* and *Lyche & Lyche,* for appellant.
*Padden & Thorson,* for respondent.

MATSON, JUSTICE.

In an action for damages for breach of promise to marry, wherein the jury gave plaintiff a verdict for $5,000, defendant made a motion for judgment *non obstante* or a new trial, which was granted *unless* plaintiff filed a written remittitur consenting to a reduction of $1,000 in the amount of the verdict. Plaintiff consented to the remittitur, and in consequence thereof defendant's motion for a new trial stood denied, and from this order of denial defendant appeals.

Plaintiff, of the age of 47 years, immigrated to this country from Germany in 1924 with her husband and one child. Although she has lived here for many years, her command and understanding of the English language is faulty. In 1939, she met defendant while she and her husband were farming near Crookston. Her husband procured an absolute divorce from her on June 17, 1946. In the latter part of the same month, upon defendant's request, she moved to his farm, where she cooked, kept house, and assisted with the chores, garden, and field work. Defendant was then a widower with minor children. Apparently, on various occasions defendant expressed a desire to marry plaintiff. According to plaintiff, defendant made a definite promise of marriage on Decem-

ber 15, 1946, which was two days short of the expiration of the six-month period following her divorce. That a mutual promise of marriage then existed between the parties is admitted. On December 19, 1946, the parties obtained a marriage license. Marriage, however, did not then take place, but the parties continued to live and work together on the farm as before. Plaintiff failed to get along with defendant's children, and in the latter part of December 1947 she struck one of them in defendant's presence. As a result of the altercation which followed, plaintiff left the farm on January 5, 1948. Defendant gave her a check amounting to $3,300 at that time. She spent two weeks in the hospital and then, at defendant's behest, returned to the farm, where she stayed until May 1948, when she and defendant separated for good. Clearly, the evidence will sustain a finding that plaintiff had loaned defendant a sum of money varying from $3,300 to $3,500, and that the $3,300 payment which she received from defendant was in payment of this loan. It is defendant's contention, however, that when he gave her the check for $3,300 plaintiff accepted the sum in complete settlement, pursuant to a mutual agreement whereby the parties released each other from the contract of marriage.[2]

Aside from procedural errors and whether the verdict is sustained by the evidence, we have these questions:

(1) May a party who has been divorced, before the expiration of the six-month period during which remarriage is prohibited by M. S. A. 517.03, enter into another valid contract of marriage if such act of marriage is not to take place until after the expiration of such period?

(2) Was it prejudicial error to exclude evidence of the fact that plaintiff, approximately 11 months after defendant's breach of promise of marriage, had obtained a license to marry another?

[2]Several states have abolished actions for breach of promise to marry. See, 5 Brooklyn L. Rev. 196, footnote 1; 10 Wisconsin L. Rev. 417, 418; 41 Illinois L. Rev. 1, 13 (1946).

(3) Where *excessive* damages are awarded as a result of passion and prejudice, may the verdict be cured by remittitur?

■ After the verdict had been received, defendant made a motion for judgment *non obstante* or a new trial. Defendant's only motion for a directed verdict was made at the close of plaintiff's testimony. The trial court properly held that defendant's motion was wholly ineffectual insofar as it asked for judgment *non obstante.* Pursuant to § 605.06, a motion for a directed verdict *at the close of all the testimony*[3] is a prerequisite to the making of a motion for judgment notwithstanding the verdict. Only the denial of the motion for a new trial is before us for review.

■ Defendant asserts that a contract of marriage based on a promise of marriage made prior to the expiration of the six-month period immediately following the date of plaintiff's divorce from her first husband is invalid as contrary to public policy as expressed by § 517.03. It is to be noted that the promise of marriage was not to be consummated in any event until after the expiration of the six-month period. Section 517.03 provides:

"No marriage shall be *contracted* * * * within six months after either [party] has been divorced from a former spouse; * * *." (Italics supplied.)

What is prohibited by the above statute? Does it prohibit a promise of marriage within the six-month period or only the act of remarriage itself? It is elementary that statutory words and phrases are to be construed according to rules of grammer and according to their common and approved usage unless to do so would be inconsistent with the manifest intent of the legislature. § 645.08(1). "Contracted" as used in the statute is a transitive verb. Webster's New International Dictionary (2 ed.) 1947, p.

[3]Wilcox v. Schloner, 222 Minn. 45, 23 N. W. (2d) 19; Callahan v. City of Duluth, 197 Minn. 403, 267 N. W. 361; Dahlquist v. M. & St. L. Ry. Co. 230 Minn. 480, 41 N. W. (2d) 586; 3 Dunnell, Dig. & Supp. § 5079. See cases under 34 M. S. A. p. 376, subd. 11, and 39 M. S. A. p. 247, subd. 39.

578, points out that to "contract marriage or matrimony" is "To enter into marriage; * * *." The statute does not prohibit a contract *for* marriage. It is the marriage itself that is declared illegal. Buelna v. Ryan, 139 Cal. 630, 73 P. 466.[4] Any other interpretation would be contrary to the manifest legislative intent. In fact, the statute is so clear that construction is out of place. By any ordinary intendment of language, he who has contracted a marriage, like he who has contracted a cold, has acquired a status or condition and not merely a promise thereof. Defendant's contention of invalidity is without merit. It is the general rule that a party who has been divorced may, within and before the expiration of the six-month statutory period immediately following the date of the divorce decree, during which an act of remarriage to another is expressly prohibited, make a valid contract to marry another when such contract by its terms is to be consummated after the expiration of such period.[5]

■ No prejudicial error resulted from the leading questions put to plaintiff by her counsel. Plaintiff's understanding and use of English was faulty. When and under what circumstances leading questions may be put to a witness is a matter resting almost wholly in the discretion of the trial court and is not ground for a new trial unless there has been a gross abuse of discretion. We find here no abuse of discretion. Blakeman v. Blakeman, 31 Minn. 396, 18 N. W. 103; Usher v. Eckhardt, 176 Minn. 210, 222 N. W. 924.

■ Defendant assigns as error the trial court's refusal to admit in evidence a marriage license issued to plaintiff and Jacob

[4]Contra, Vnuk v. Patterson, 118 Or. 602, 247 P. 766, 47 A. L. R. 394, involving a statute under which marriages contracted during the six-month prohibited period are void and not merely voidable as in Minnesota. See, State v. Yoder, 113 Minn. 503, 130 N. W. 10, L. R. A. 1916C, 686.

[5]Buelna v. Ryan, 139 Cal. 630, 73 P. 466; Morgan v. Muench, 181 Iowa 719, 156 N. W. 819; Cooper v. Bower, 78 Kan. 156, 96 P. 59; Greenback v. Stewart, 175 Okl. 500, 53 P. (2d) 542; 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6 ed.) §§ 1287 and 1929; see, 11 C. J. S., Breach of Marriage Promise, § 2, p. 773.

Klooz about 11 months after defendant's breach of promise. Although the general rule seems to be that plaintiff's declarations and acts, *occurring after the marriage contract was broken,* are inadmissible in mitigation of damages, whether it be by way of showing plaintiff's lack of affection for defendant at the time of their engagement or to show that she has subsequently made satisfactory marital arrangements with another (see, Annotation, 62 A. L. R. 846; 8 Am. Jur., Breach of Promise of Marriage, § 30), it is unnecesary here to determine whether such rule ought to be adopted. In the instant case, even if we were to hold such evidence admissible, there would, nevertheless, be no prejudicial error, in that the marriage license was issued about 11 months after defendant's breach and, as such, constituted evidence of so remote a character as to have little if any weight. No hard and fast rule can be laid down to fix the limitation of reasonable time as to remoteness. Whether evidence should be excluded for remoteness rests largely in the discretion of the trial court. See, In re Estate of Forsythe, 221 Minn. 303, 22 N. W. (2d) 19, 167 A. L. R. 1; 20 Am. Jur., Evidence, § 249. It also goes without saying that a woman may recover substantial damages for breach of promise of marriage notwithstanding her subsequent marriage to another. See, Fisher v. Barber, 62 Tex. Civ. App. 34, 130 S. W. 871.

Is the verdict excessive as the result of passion and prejudice? The order of the trial court does not indicate clearly on what specific ground a new trial was granted. The court's memorandum was not made a part of the order. Where an order of the trial court fails to specify clearly upon what ground a new trial was granted, the court's memorandum, although not made a part thereof, may be examined *for the limited purpose of clarification* to enable the appellate court to discover the ground upon which the new trial was granted.[6] An examination of the memorandum indicates that the court considered the verdict substantially cor-

---

[6]Ross v. D. M. & I. R. Ry. Co. 207 Minn. 157, 290 N. W. 566 (certiorari denied, 311 U. S. 656, 61 S. Ct. 9, 85 L. ed. 420); Johnson v. Johnson, 223 Minn. 420, 27 N. W. (2d) 289; see, M. S. A. 547.01(5).

rect on the merits, but granted a new trial—unless plaintiff consented to a remittitur of $1,000—on the ground that the *amount* of the damages awarded was *excessive* as having been given under the influence of passion and prejudice. Where the amount of damages awarded under a verdict is excessive and such excess appears to have been given under the influence of passion and prejudice, but the verdict in other respects is substantially correct and reasonably appears not to have been influenced by such passion and prejudice, the trial court *in the exercise of a sound discretion* may deny a new trial upon the condition that plaintiff remit such sum as shall, in the judgment of the court, eliminate the element of excessiveness. Whatever may be the merits of this rule, it is well established in Minnesota, except as to actions brought under federal statutes. Cox v. C. G. W. R. Co. 176 Minn. 437, 223 N. W. 675; 16 Minn. L. Rev. 185; 5 Dunnell, Dig. & Supp. § 7138.[7] We find no abuse of discretion in denying a new trial on the condition that plaintiff consent to a remittitur of $1,000. Taking, as we must, the view of the evidence most favorable to the verdict, the amount awarded to plaintiff as reduced to $4,000 is not excessive. Reasonably the jury could find that the $3,300 paid by defendant to plaintiff when she left the farm was simply repayment in full of the money which she had theretofore loaned to him and was not in payment of any claim which she might have against defendant as a result of a breach of promise or otherwise.

■ An action for breach of promise is in form on contract; but in respect of damages it is in general governed by the law applicable to tort actions. Bukowski v. Kuznia, 151 Minn. 249, 186 N. W. 311. The amount awarded cannot be measured by any fixed stand-

---

[7]Remittitur may not be applied in state courts where actions are based on federal statutes. See, M. St. P. & S. S. M. Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501, 75 L. ed. 1243, reversing the Minnesota supreme court in Moquin v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 56, 231 N. W. 829. See, Ross v. D. M. & I. R. Ry. Co. 207 Minn. 157, 290 N. W. 566 (certiorari denied, 311 U. S. 656, 61 S. Ct. 9, 85 L. ed. 420).

ard, but in general is such sum as will compensate plaintiff for the benefits, losses, or detriments suffered as a result of the broken promise to marry. There was no error in instructing the jury that in assessing plaintiff's damages it could take into consideration defendant's financial worth, his social position, the pecuniary and social advantages plaintiff would have enjoyed had he performed his contract, as well as the mental pain and anguish she suffered as a result of the breach. Bukowski v. Kuznia, *supra;* Hahn v. Bettingen, 81 Minn. 91, 83 N. W. 467, 50 L. R. A. 669. In view of the fact that the evidence sustains a finding that defendant owned 320 acres of farm land, of the reasonable value of $75 per acre, plus a full line of farm machinery, which was subject to an encumbrance of only $3,500, damages in the sum of $4,000 do not appear unreasonable.

It is admitted that plaintiff and defendant made mutual promises of marriage. Defendant insists, however, that he did not breach such contract of marriage, but that it was rescinded by a mutual agreement of release and that a final settlement was effected. Whether the marriage contract was terminated by defendant's breach or by mutual release of both parties was a fact issue for the jury. A detailed review of the evidence will serve no purpose. Clearly, on this issue the evidence sustains the verdict.

We decline to consider certain assignments of error which have been asserted but not argued. An assignment of error based on mere assertion and not supported by any argument or authorities is deemed waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312. No obvious error appears.

The order of the trial court is affirmed.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.