Walter WORTHY, Appellant,

v.

Bernice MAJOR, Appellee.

No. 5391.

District of Columbia Court of Appeals.

Argued Dec. 7, 1970.

Decided March 22, 1971.

Kurt Berlin, Washington, D. C., with whom Ernest M. Shalowitz and Frank Smith, Washington, D. C., were on the brief, for appellant.

Alvin Gordon, Washington, D. C., for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

KERN, Associate Judge.

After a jury trial appellee recovered a verdict in the amount of $15,000 against appellant for his breach of promise[1] to marry her. Appellant and appellee, who are 60 and 51, respectively, were the only witnesses at trial. Their testimony agreed in certain respects: They were fellow workers at a government agency; each had an unhappy marriage and sought solace from the other in conversations at work; and, after she was divorced in early 1956 and he in late 1958, their relationship ripened into a full-fledged affair.

Appellee testified that after both had obtained their divorces, appellant proposed marriage and she accepted his proposal. However, they agreed to postpone the wedding until he could settle certain monetary claims being advanced by his ex-wife. From then on she went out only with him. Although appellee never received a ring from him and made no formal public announcement of their engagement to marry, she did tell her mother, her son, and fellow members of her social club that they were going to marry. During the period she waited—from 1959 to 1964—she paid his rent and bought him clothes and food, so that he might save his own income for the settlement of his first wife's claims, which he ultimately effected at the cost of $15,-000. Thereupon, he married another.

Appellant conceded in his testimony that he had stayed with appellee overnight on a regular basis during the period in question but he insisted that he had never proposed marriage. He said that he contributed to the payment of her rent and the purchase of her groceries. His annual income during this time was about $14,000, derived in part from his government job and in part from the operation of five taxis he rented to others. He had a savings account of $10,000 (presumably before finally paying off his first wife) and owned 46 acres in Charles County, Maryland, where he lived on a farm with his three children. He bought two lots in West Virginia for about one hundred dollars and one in Florida for a price of between $3,000 and $5,000. During these years, Charles County bought from him for $50,000 some of his land for a county school site.

Appellant contends that the trial court erred in failing to direct a verdict for him at the conclusion of her case, in its instructions on the burden of proof, in its admission of evidence and its instructions relating to damages, in its handling in front of the jury of a certain objection by appellant's trial counsel, and in its refusal to grant a new trial because the amount of damages awarded by the verdict was excessive. After a careful examination of the record we are satisfied that only his contentions concerning damages raise issues that require discussion.

Damages may be assessed in a breach of promise suit only to compensate for the aggrieved party's (1) mental suffering, (2) injury to health, (3) loss of reputation, (4) loss of pecuniary benefits that would accrue as a result of the proposed marriage and (5) losses resulting from expenditures on preparations for the marriage, such as the trousseau. 6 M. Belli, Modern Trials, § 294, at 533 (1964). *See also* McCormick on Damages, § 111, at 398 (1935). Appellant argues that the verdict of $15,000 in this case was far beyond the reasonable range of compensation and

---

[1]. The breach of promise action has engendered considerable criticism for its susceptibility to fraudulent proceedings and has been circumscribed by legislatures in a number of states. Prosser on Torts, 697 2d ed. 1955).

so excessive as to require a new trial. We conclude that the judgment must indeed be modified, not because the verdict was so grossly excessive as to shock the conscience, but because of an error in the trial court's instruction to the jury on damages.

As to appellant's contention of excessive damages, we are of the opinion that whenever a jury has rendered its verdict and the trial court has refused to grant a new trial, an appellate court should be extremely cautious in substituting its judgment for that of the jury and trial court in fixing damages. Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 113, 409 F.2d 145, 148 (1969). On this record it is fair to conclude that appellant was clearly a person of some means and appellee would certainly have benefited financially by marriage to him. *See* Kugling v. Williamson, 231 Minn. 135, 42 N.W.2d 534 (1950). Moreover, the jury in seeking to compensate appellee could properly have taken into account the fact that she had spent five years of her life, at a somewhat advanced age, waiting for him to negotiate out of the financial entanglements of his first marriage, only to be shunted aside then, in a rather off-handed manner, for someone else. While we might not have rendered a verdict in as large an amount as did the jury, we cannot say that a basis for such damages was wholly lacking. *See* City Stores Co. v. Gibson, D.C.App., 263 A.2d 252 (1970).

We turn now to appellant's contention concerning the trial court's instruction on damages. At trial, the court permitted appellee to testify over appellant's objection that she had spent $4,100 on rent, food and clothing for him. It explained to counsel at the bench out of the presence of the jury that such testimony was admissible *solely* for the purpose of showing "her intent and her understanding of an agreement [to marry] * * * and *not to de-velop what we might consider as special damage for * * * the value of room and board.*" (Emphasis added.) However, at the conclusion of the trial, the court instructed the jury that if it found for appellee, it should fix damages to compensate her for "her pecuniary loss *as evidenced by her testimony today* that she claimed she sustained * * *." (Emphasis added.) Despite timely and specific objection by appellant, the trial judge gave no explanation to the jury of what constituted her "pecuniary loss" and failed to qualify this part of his instruction consistent with his ruling during trial which had limited the admissibility of appellee's testimony of her expenditures on appellant's room and board. The result was that in fixing damages the jury was permitted to consider evidence which the trial court had previously told counsel it would not be permitted to consider and this constitutes error. *See* 73 A.L.R.2d 553, 588 (1960).

In determining the proper disposition of this case we note that the promise upon which appellee's suit is based was made more than eleven years ago and the relevant events surrounding such promise were concluded more than six years ago. We consider a retrial after such a passage of time fraught with difficulties and we are satisfied upon this record that the trial court's error could have affected only the damages ultimately awarded. Accordingly, the judgment will stand affirmed provided, within ten days hereof, appellee files with the trial court a remittitur in the sum of $4,100; otherwise, the judgment will stand reversed and the case remanded for a new trial. Meyers v. Antone, D.C.App., 227 A.2d 56, 60 (1967); Boyle v. Bond, 88 U.S. App.D.C. 178, 179, 187 F.2d 362, 363 (1951). *See also* Fred Drew Construction Co. v. Mire, D.C.Mun.App., 89 A.2d 634, 635 (1952).

Affirmed on condition.