AMERICAN FAMILY INSURANCE GROUP, d/b/a AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN
*v.* DENNIS R. FORD.

[No. 472A182. Filed March 22, 1973. Rehearing denied April 24, 1973. Transfer denied August 27, 1973.]

574

*James E. Rocap, Jr., Thomas E. Cunningham, Rocap, Rocap, Reese & Young,* of Indianapolis, for appellant.

*Larry S. Pugh, Hammond and Pugh,* of Indianapolis, for appellee.

WHITE, J.—This is an appeal from a judgment declaring that an automobile insurance policy issued by defendant-appellant Insurance Company (company) insuring plaintiff-appellee Dennis R. Ford (insured), was in effect on March 2, 1970, the date of a collision in which he was involved while driving the automobile described in the policy.

The only issue before the lower court at the trial was whether the policy had been cancelled (for non-payment of premium) prior to the date of the accident.[1] The trial court's general findings for the insured-plaintiff implied the specific finding that the evidence failed to prove cancellation. Because we cannot weigh the evidence and because we cannot say that the evidence is without conflict and leads unavoidably to the conclusion that the policy was cancelled, we affirm.

Exhibit A to plaintiff-appellee-insured's complaint was an automobile insurance policy which, for the purpose of this dispute and this opinion, must "be considered as if written for a policy period or term of six (6) months" commencing September 16, 1969, and ending March 16, 1970.[2] The insurer's answer admitted that the policy had been "in force" but denied that it was in force on March 2, 1970. In a second defense the company alleged that it had

---

1. We will later discuss a second issue the appellant-insurer raised for the first time in its motion to correct errors.

2. Quoted is Ind. Acts 1969, Ch. 332, § 3, IC 1971, 27-7-6-3, Ind. Ann. Stat. § 39-4315 (Burns 1972 Supp.). The policy actually stated a shorter policy period but for the purpose of the cancellation regulations imposed upon automobile insurers by the Act cited, § 3 thereof provides that "any policy with a policy period or term of six (6) months or less . . . shall for the purposes of this act be considered as if written for a policy period or term of six (6) months." The 1969 Acts became effective August 18, 1969, twenty-nine days before the inception of this policy.

issued the policy "for the period from September 16, 1969 until December 16, 1969, and for such periods of time thereafter as plaintiff herein might pay the premium for said policy." And further alleged cancellation by written notice to insured for non-payment of premium on or about January 21, 1970, and that the policy was not in force on March 2, 1970.[3] In choosing to affirmatively plead cancellation as a second defense, counsel were wise. The defense is one of confession and avoidance, an affirmative defense which must be specially pleaded.

Trial Rule 8(C) provides in pertinent part:

> "A responsive pleading [to a claim for relief, TR. 8(A)] shall set forth affirmatively and carry the burden of proving: Accord and satisfaction, . . . discharge in bankruptcy, . . . failure of consideration . . . payment, release, . . . *and any other matter constituting an avoidance, matter of abatement, or affirmative defense.* A party required to affirmatively plead any matters . . . shall have the burden of proving such matters . . . ." (Our emphasis.)

While not specifically mentioned in the score or more of defenses listed in TR. 8(C) (most of which we have omitted from the above quotation), cancellation is definitely in the class of new matter which has always required special pleading to make it admissible in evidence as a defense to an action on a contract. In *Mabin* v. *Webster* (1891), 129 Ind. 430, 431, 28 N.E. 863, 864, it was held to be reversible error to strike a paragraph of answer alleging rescission:

> "The rescission of the contract was a proper defence to be pleaded to the action, and such defence was not admissible under any other paragraph of answer. [Which included a general denial.]
>
> * * *
>
> "A plea alleging a rescission of contract is an affirmative plea. It admits the making of the contract, and alleges a rescission of it."

---

3. No reply is permitted under Trial Rule 7(A) unless the court orders one and none was ordered. TR. 8(D) provides that in such cases the averments of the answer "shall be taken as denied or avoided."

*Storer* v. *Markley* (1905), 164 Ind. 535, 537, 73 N.E. 1081, states that:

> ". . . rescission of a contract is an affirmative defense, and when relied upon must be specially pleaded. *Mabin* v. *Webster* (1891), 129 Ind. 430, 28 Am. St. 199; *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337; 18 Ency. Pl. and Pr., 849."

The *Jordan* case, cited immediately above in *Storer* v. *Markley* applied the rule to a defense of abandonment. Rescission, abandonment, and cancellation are words which describe events occurring subsequent to the inception of a contract and which terminate its legal existence. "Cancellation, generally stated, is a right to rescind, abandon or cancel a contract of insurance. . . ." *State* v. *Larson* (1943), 152 Fla. 729, 730, 12 So. 2d 896, 897.

> "Abandonment of a contract as a defense is by way of confession and avoidance and not a direct denial of any element essential to the proof of the plaintiffs' main case. Where the defense rests on a rescission or mutual abandonment of a contract, the issue is whether the contract has ceased to have legal existence or has been terminated by reason of events occurring subsequent to the inception of the contract. It is a distinct and substantive ground of defense which 'must be alleged in the answer according to the provisions of the Practice Act, if a defendant seeks to avail himself of it in order to defeat a recovery on a contract.' " *Mark* v. *Stuart-Howland Co.* (1917), 226 Mass. 35, 115 N.E. 42, 44, 2 A.L.R. 678, 681.

Although the burden was clearly on the company to prove its defense of cancellation that point has little significance at this time in this case. If the burden were on insured to disprove cancellation, the burden was discharged. The evidence was sufficient to sustain a finding that the policy was not cancelled. The evidence to that end was the insured's testimony that he did not receive notice of cancellation prior to the accident. It was, of course, not necessary that he actually received notice of cancellation for it to be effective as a determinant of the policy's legal existence. By

both policy provision and statute, proof of mailing is sufficient.[4] But just as proof of proper mailing of a communication justifies the inference that it was received in due course, proof that it was not received justifies the inference that it was never mailed.[5] We do not hold, of course, that insured proved he did not receive the cancellation notice or the subsequent letter which might have informed him of it. But he so testified and if the trial judge believed him that was proof.[6] But even with the trial judge believing him, the presumption of non-mailing might have been overcome by convincing evidence of mailing.

The evidence that the notice of cancellation was mailed came from one Donald Grinde, the company's AmPlan Account Analyst, whose testimony, at best, was sufficient to establish what the ordinary office routine was and that there was a computer record that the notice was sent, but that no copy of the notice was kept in the company files. The following cross-examination colloquy epitomizes his testimony:

---

4. Ind. Acts 1969, Ch. 332, § 7, IC 1971, 27-7-6-7, Ind. Ann. Stat. § 39-4319 (Burns 1972 Supp.) reads: "Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice."

5. "When a letter properly addressed and stamped, is deposited in the post office, the presumption arises that such letter arrived in due course at its destination. However, when the failure of such letter to arrive has been established, there conversely arises the presumption that it was never mailed." *Matlock* v. *Citizens National Bank*, 43 Idaho 214, 219, 250 P. 648, 649, 50 A.L.R. 1418, 1421. See also, 29 Am. Jur. 2d 246-51, Evidence, §§ 193-8, cases cited at 251, and Annotation, 91 A.L.R. 161, 164, 168; also 30 Am. Jur. 2d 283-5, Evidence §§ 1116-9.

6. Appellant-company argues that insured's credibility was destroyed by his testimony that a letter addressed to his finance company showing a cancellation date of March 5, 1970, had come to him through the mail. There was testimony which would lead one to believe such testimony was *probably* objectively untrue. Whether the trial judge believed insured made an honest mistake, or that he actually did receive it by mail, or that he was lying about this letter but telling the truth about not receiving notice of cancellation, we need not speculate.

The Company's brief candidly states:

"Defendant-Appellant realizes the problems involved in this specification of error. Normally, where there is a conflict in the evidence as to whether a document was mailed and received it is for the trier of fact. *United Farm Bureau Mutual Insurance Company* v. *Adams* (1969) [145 Ind. App. 516,] 251 N.E. (2) 696. *Allstate Insurance Company* v. *Morrison* (1970) [146 Ind. App. 497,] 256 N.E. (2) 918."

"Q. Do you have any knowledge about it other than that the computer record shows the fact that notices should have been sent out?"

"A. No."

"Q. As far as anybody knowing or being able to say that those notices were in fact mailed or taken to the post office, do you have any knowledge of that?"

"A. No."

"Q. You do have records showing that a computer said so but that is all?"

"A. Correct."

Assuming this evidence standing alone was sufficient to establish that the notice was mailed (which we do not need here to hold and do not hold) or even that it was sufficient ██ to overcome the contrary inference which could have been drawn from insured's testimony of non-receipt, what it actually did at the trial level depended entirely on the weight accorded to it, and to insured's testimony, by the trier of fact.[7]

Having tried the case on the sole issue of cancellation[8] the company, some three months later, asserted for the first time, in its motion to correct errors[9] the proposition that ██ the policy lapsed (i.e., terminated without necessity of cancellation[10]) on February 16, 1970, which was

7. See *United Farm Bureau Mutual Insurance Company* v. *Adams* (1969), 145 Ind. App. 516, 251 N.E.2d 696, 19 Ind. Dec. 1.

8. This is the only issue mentioned in the company's "Post Trial Brief" submitted pursuant to the trial court's entry at the conclusion of evidence taking at trial, as follows: "Attorneys to furnish written final argument in 10 days." In that written argument the defendant-company conceded that the plaintiff-insured had made a *prima facie* case, citing *Smith* v. *Russell* (1969), 146 Ind. App. 157, 253 N.E.2d 268, 19 Ind. Dec. 686, and concluded that "[t]his is a factual matter as to which side is telling the truth." R. p. 116, ll. 8-9. (We do not agree that by finding against the company the court implied that its witnesses were not telling the truth.)

9. The Record discloses that the evidence was heard September 10, 1971 (R. p. 95), the company filed its post-trial brief October 5, 1971 (R. p. 109), the trial court entered its decision October 27, 1971 (R. p. 121), and the company filed its Motion to Correct Errors on December 17, 1971 (R. p. 124).

10. *Life & Casualty Insurance Co. of Tennessee* v. *Wheeler* (1936), 265 Ky. 269, 276, 96 S.W.2d 753, 756, 106 A.L.R. 1270, 1275.

the end of the last period for which a premium was paid or tendered. That argument has plausibility only if we take at face value the statement on the policy's declaration sheet that it is effective from September 16, 1969, to December 16, 1969, a period of only three months. On that basis to make a *prima facie* case that the policy was in force on March 2, 1970, would have required evidence that something was done to extend the policy beyond its stated expiration of December 16, 1969. We hold, however, that absent cancellation (for non-payment of premium or other permissible reason) in conformity with the provisions of Ind. Acts 1969, Ch. 332, IC 1971, 27-7-6-1 through 11, Ind. Ann. Stat. §§ 39-4313 through 4323 (Burns 1972 Supp.), the policy period was six months, September 16, 1969 through March 16, 1970. It was made so by that act which says that for that act's purposes a policy written for a term less than six monhs "shall . . . be considered as if written for a policy period or term of six (6) months." The act contains nothing labeled as a statement of purposes but its obvious purposes include the protection of automobile policyholders against termination of coverage, both before and after expiration of the policy period, except in a manner authorized by the act. That, also, is what this case is all about. Therefore, for the purpose of determining whether coverage was terminated in conformity with the act, the policy period ended March 16, 1970. And since the trial court found against the Company on the issue of whether notice of cancellation was duly mailed, there was no error in in finding the policy to be in force on March 2, 1970.

We are not saying, however, that a policy of insurance cannot be so written that timely installment prepayment of premiums is a condition precedent to continued coverage. This policy, however, was not so written. Since this policy was not so written we do not need to decide whether to so write an *automobile* policy (as defined in IC 1971, 27-7-6-2) would

violate the 1969 statute we have previously discussed (IC 1971, 27-7-6-1 through 11).

The insuring clause is the only provision of the policy relied on to support the company's contention that "[w]here a policy of insurance calls for payment in a prepaid manner, the policy does not continue in force if the premium is not paid as specified." But all that the insuring clause says is that the company's agreement with the insured be made "In consideration of the payment of the premium. . . ." It says nothing about prepayment being a condition of continued coverage.

The company also relies on something called "AmPlan," which may be a supplementary agreement between the company and the insured relating to premium payment, but it is not in evidence or otherwise a part of the record. To substantiate the claim that AmPlan is based on the principle of prepayment the company cites a letter written for the company by Mr. Grinde on February 17, 1970[11], in which he said: "Because your AmPlan Account is based on the principle of prepayment, it is important that all monthly payments be sent to our Company by the Monthly Day Due". That letter also said: "When your Monthly AmPlan Payment due on January 16, 1970 was not received by January 21, 1970, it was necessary to cancel your AmPlan account in accordance with the AmPlan Cancellation Notice sent to you." If that letter is accepted as valid evidence of the provisions of AmPlan, all it tends to prove is that default in payment is cause for cancellation.

The judgment is affirmed.

Buchanan, P.J. and Sullivan, J., concur.

---

11. Which, incidentally, the insured testified he did not receive.