**DAIRYLAND INSURANCE CO., Respondent,**

v.

**Dwight NEUMAN and Sally Neuman, Charles Hansen, James Kratzke and Shirley Kratzke, d/b/a Club 101, Marvin Peters, d/b/a Delhi Bears Den Bar, Fraternal Order of Eagles Aeire 3421, Respondents,**

**Verna Ness, Defendant,**

**and**

**Milwaukee Mutual Insurance Co., Appellant.**

**No. C4–82–460.**

Supreme Court of Minnesota.

Sept. 9, 1983.

---

Peterson, Bell & Converse, David S. Anderson, St. Paul, for appellant.

Miller & Neary, Gay B. Urness, Minneapolis, for respondent Dairyland Ins. Co.

Perbix, Harvey & Thorfinson, Hopkins, for respondent Neuman.

Errol E. Hauser, Sleepy Eye, for respondent Hansen.

J. Brian O'Leary, Springfield, for respondent Kratzke.

Richard J. Groseth, Minneapolis, for respondent Peters, et al.

Raymond O. Walz, Redwood Falls, for respondent Fraternal Order of Eagles.

WAHL, Justice.

Defendant-intervenor Milwaukee Mutual Insurance Company (Milwaukee Mutual) appeals from a summary judgment in favor of plaintiff Dairyland Insurance Company (Dairyland) in this declaratory judgment action. The trial court held that the short-term policy of automobile liability insurance

issued by Dairyland to defendant Charles Hansen was not in force and effect on January 26, 1979, when Hansen's automobile was involved in an accident.

The appeal involves interpretation of Minn.Stat. §§ 65B.14.21 (1982) concerning the cancellation or nonrenewal of automobile insurance policies. The primary issue, an issue of first impression in Minnesota, is whether Minn.Stat. § 65B.14, subd. 3, which provides "that any policy with a policy period or term of less than six months * * * shall for the purpose of sections 65B.14 to 65B.21 be considered as if written for successive policy periods or terms of six months," requires insurers to comply with statutory cancellation procedures in order to terminate coverage under such a policy. Because we hold that it does so require and that statutory cancellation procedures were not followed in this case, we reverse.

Charles Hansen paid for and received from Dairyland a short-term automobile insurance policy covering his 1979 Chevrolet Blazer automobile. The policy had liability limits of $50,000 and was effective from November 13, 1978 to January 22, 1979, a period of 71 days. Dairyland claims to have offered to renew that policy by mailing to Hansen, on either January 5 or 9, 1979, a renewal notice which stated that the coverage would expire if the renewal premium was not received at the company office by the January 22, 1979 due date. Hansen claims that he never received a bill and thus did not pay the premium. Dairyland mailed a copy of Hansen's notice to the STOP general agency in Des Moines, Iowa, which writes Dairyland's insurance for Minnesota insureds, but did not mail such a notice to Hansen's local agent.

On February 9, 1979, Dairyland mailed Hansen a rewrite notice offering to reinstate the policy. Immediately upon receipt of the notice, Hansen paid the requested premium. A new policy was issued, effective February 24, 1979, for a period of 3 months.

Meanwhile, on January 26, 1979, Hansen was involved in an accident while driving his automobile. His passenger, Dwight Neuman, allegedly permanently quadriplegic as a result of the accident, brought a negligence action against Hansen. Dairyland commenced this declaratory judgment action claiming that Hansen's policy had expired on January 22, 1979 by reason of Hansen's nonpayment of premium and that, therefore, it is not liable for any damages which might be assessed against Hansen. Milwaukee Mutual, Neuman's uninsured motorist carrier, with policy limits of $220,000, intervened, arguing that Hansen's policy was in full force and effect on January 26, 1979 because Dairyland did not comply with the statutory cancellation procedures for short-term automobile insurance policies, as required by Minn.Stat. §§ 65B.14, subd. 3, 65B.15 and 65B.16.

An insurer may terminate coverage under automobile policies by nonrenewal or by cancellation. Sections 65B.14–.21 specify the circumstances in which nonrenewal of a policy is the appropriate method of termination and those in which cancellation is required and sets out the procedures to be followed in each case. The renewal statute, section 65B.17, requires an insurer to give 60 days advance notice of its intention not to renew, except that if the insurer has manifested its willingness to renew or "[i]n case of nonpayment of the renewal premium," no notice is required for termination. Nonpayment of premium is also a specific ground for cancellation of a policy, but under sections 65B.15 and 65B.16 an insurer must provide precise and timely statutory notice to the insured of the impending cancellation. Even when an insurer is exercising its right under section 65B.15, subd. 2, to cancel insurance which has been in effect for less than 60 days without stating grounds, at least 10 days notice of cancellation must be given. Minn.Stat. § 65B.16.

1. The question before us is whether the renewal statute or the cancellation statutes govern the termination of short-term policies.

Minn.Stat. § 65B.14, subd. 3, which by definition provides that a "renewal" occurs at the end of a policy period, provides further "that *any policy with a policy period or*

*term of less than six months* or any policy with no fixed expiration date *shall for the purpose of sections 65B.14 to 65B.21 be considered as if written for successive policy periods or terms of six months."* (Emphasis added.) [1]

Dairyland would have us interpret this statute to mean that when the policy is written for a period of less than 6 months, the insurer cannot fail to renew the policy for at least 6 months. Under this interpretation, Dairyland complied with the mandate of the statute by offering to renew Hansen's policy but Hansen rejected that offer by nonpayment of premium.

Milwaukee Mutual sees the clear meaning of section 65B.14, subd. 3 to be only this: that, since the renewal provisions of section 65B.17 are not triggered until the end of the policy period and that policy period does not end until 6 months has elapsed for policies written for less than a 6-month stated term, any termination during the statutory 6-month period is "during the policy period" so as to require the insurer to comply with the cancellation provisions of section 65B.15.

The courts of Nebraska, Louisiana and Indiana have considered this issue under statutes either identical or similar to ours.[2] *Conover v. Dairyland Insurance Co.,* 200 Neb. 715, 265 N.W.2d 222 (1978); *Taylor v. MFA Mutual Insurance Co.,* 334 So.2d 402 (La.1976); *American Family Group v. Ford,* 155 Ind.App. 573, 293 N.E.2d 524 (1973). These courts each held that the policy period for a policy issued for a term of less than 6 months is 6 months and that cancellation under the statute is required to terminate coverage within the statutory 6-month term. The *Taylor* court recognized the policy reason underlying such a statutory requirement. The legislature, concerned that

a person insured under a short-term policy might be unaware that coverage had terminated, "intended that an insured under a policy written for a short term of less than six months should have the benefit of the cancellation provision of the statute so that he would have adequate notice and opportunity to procure other insurance protection." 334 So.2d at 406. We have similarly recognized a legislative concern for providing an insured with adequate notice and an opportunity to obtain other insurance protection in case of termination. *Donarski v. Lardy,* 251 Minn. 358, 364, 88 N.W.2d 7, 12 (1958).

Dairyland relies primarily on *Anthony v. National Grange Mutual Insurance Co.,* 113 N.H. 486, 309 A.2d 919 (1973), which applied the non-renewal statutes to short-term policies (less than 12 months in New Hampshire). *Anthony* is distinguishable from this case because, even had the court applied the cancellation statutes, the insurer sent three notices of renewal, the last one containing a notice of cancellation.

■ We hold that under Minn.Stat. § 65B.14, subd. 3, the policy period for a policy of insurance issued for a term of less than 6 months is 6 months and that cancellation under the statute is required to terminate coverage within the 6-month term.

2. Having found a cancellation requirement, we must next determine whether Dairyland followed statutory cancellation procedures. The trial court found no evidence that Dairyland had any intention of either cancelling Hansen's policy or attempting to do so. In fact, Dairyland, in its answers to interrogatories, stated that the policy had not been cancelled but had expired for nonpayment of premiums. Before this court, however, Dairyland argues that the renewal notice it claims to have sent Hansen on January 5, 1979, was effective as

---

1. Minn.Stat. § 65B.14, subd. 3 (1982) provides: "Renewal" or "to renew" means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; provided, however, that any policy with a policy

period or term of less than six months or any policy with no fixed expiration date shall for the purpose of sections 65B.14 to 65B.21 be considered as if written for successive policy periods or terms of six months.

2. Neb.Rev.Stat. § 44–514(3) (1978); La.Rev. Stat.Ann. § 22:636.1 A(5) (West 1978); Ind. Stat.Ann. § 27–7–6–3 (1975).

a cancellation notice under sections 65B.15, subd. 2 and 65B.16.[3] These sections give an insurer the option of cancelling, on 10 days notice, any policy which has been in effect less than 60 days at the time notice of cancellation is mailed or delivered to the insurer, unless it is a renewal policy.

An effective notice of cancellation under the 60-day option need not give the otherwise statutorily required reasons for cancellation. Our case law requires, however, that notice of cancellation of an existing liability policy for failure to pay the premium must be "explicit, unconditional, and unequivocal" and must make clear that coverage will cease without further notice. *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 203–04, 81 N.W.2d 782, 788 (1957). The unequivocal message of cancellation must be "tested by the meaning it would reasonably convey to one who receives it." *Lievers v. National Insurance Underwriters,* 257 Minn. 268, 271, 101 N.W.2d 817, 819 (1960).

The notice Dairyland claims to have sent to Hansen states on its face, on the bottom line, as follows: "RENEWAL NOTICE," then, in the next box, in smaller letters still, "NO GRACE PERIOD," and, in even smaller letters, "If premium is not received in office by due date your coverage expires." On the back of the notice, in a list of printed items, Item 3 reads, "The insurance coverage shall expire as of 12:01 A.M. on the due date of this notice, as shown, unless the premium is paid when due."

This notice, which Dairyland would have us accept as a notice of impending cancellation under the statute, is in small letters and does not use the word "cancellation," which is considered a significant factor by some courts. *See, e.g., Conley v. Ratayzcak,* 92 Ill.App.3d 29, 33, 46 Ill.Dec. 616, 619, 414 N.E.2d 500, 503 (1980); *Staley v. Municipal Mutual Insurance Co. of West Virginia,* 282 S.E.2d 56, 59 (W.Va.1981). The notice was not sent in a separate letter, as were the notices in *Cormican* and *Lievers,* but was an incidental part of a premium bill. Applying the *Lievers* test to this notice, *i.e.,* what is the meaning conveyed to the recipient, the message is not one of cancellation but of premium due. We hold as a matter of law that the renewal notice in this case is not the cancellation notice required by sections 65B.15, subd. 2 and 65B.16.

In view of the extremely important policy reasons against lapses of automobile insurance expressed in all jurisdictions addressing the issue, an insurer is required to give effective notice of impending termination. *See* 2 R. Long, *Law of Liability Insurance* § 15.08 (1982). If insurers of short-term policies must adhere to the requirements of cancellation rather than renewal statutes, as we hold they must, there

---

**3.** Minn.Stat. § 65B.15 (1982) provides in relevant part:

Subdivision 1. No cancellation or reduction in the limits of liability of coverage during the policy period of any policy shall be effective unless notice thereof is given and unless based on one or more reasons stated in the policy which shall be limited to the following:

1. Nonpayment of premium;

\* \* \* \* \* \*

Subd. 2. This section shall not apply to any policy of automobile liability insurance which has been in effect less than 60 days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy.

Minn.Stat. § 65B.16 (1982) provides:

No notice of cancellation or reduction in the limits of liability of coverage of an automobile insurance policy under section 65B.15 shall be effective unless the specific underwriting or other reason or reasons for such cancellation or reduction in the limits of liability of coverage are stated in such notice and the notice is mailed or delivered by the insurer to the named insured at least 30 days prior to the effective date of cancellation; provided, however, that when nonpayment of premium is the reason for cancellation or when the company is exercising its right to cancel insurance which has been in effect for less than 60 days at least ten days notice of cancellation shall be given. When nonpayment of premiums is the reason for cancellation, the reason must be given to the insured with the notice of cancellation; and if the company is exercising its right to cancel within the first 60 days of coverage and notice is given with less than ten days remaining in the 60 day period, the coverage must be extended, to expire ten days after notice was mailed.

must be no mistake as to the meaning of the notice given. If that notice is to be a part of a premium bill, the words of cancellation must be bold and obvious, not hidden in a corner. We doubt that the average insured reads the fine print on bills.

Because we have determined that statutory cancellation procedures were required to terminate Hansen's short-term policy and that Dairyland did not comply with those procedures, we need not discuss appellant's contention that genuine issues of material fact existed as to whether or not Dairyland mailed its renewal notice to Hansen and whether it had unlawfully used a nonresident agent to service Hansen's policy. Hansen's policy was in effect on January 26, 1979, and Dairyland is liable for any damages assessed against Hansen, to the limits of its policy liability.

Reversed.

KELLEY, Justice (concurring specially).

I concur in the court's opinion that the policy period for a policy of automobile insurance issued for a term of less than 6 months is 6 months and that cancellation under Minn.Stat. § 65B.15 (1982) is required to terminate coverage within the 6-month term. Because the trial court concluded that Minn.Stat. § 65B.17 (1982) governing policy renewals applied and further concluded that Dairyland had satisfied the renewal requirements, this case must be reversed.

However, in my opinion it is unnecessary for this court to determine whether Dairyland's notice was sufficient to meet the cancellation requirements provided in section 65B.15. In the memorandum attached to the order granting Dairyland summary judgment, the trial judge observed that "[t]here is no evidence whatsoever that the plaintiff [Dairyland] had any intention to either cancel defendant Charles Hansen's policy or to attempt to do so." If that were a finding of fact, that should terminate the inquiry.[1]

Secondly, if it is concluded that the court's statement in the memorandum did not constitute a finding, Dairyland itself took the position in the trial court that the policy had not been cancelled. Accordingly, I suggest that it is unnecessary for the court to examine the question further.

However, if it is necessary for us to address the issue, I agree that in this case Dairyland's notice was ineffective under the test we have previously announced in *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 81 N.W.2d 782 (1957), and in *Lievers v. National Insurance Underwriters*, 257 Minn. 268, 101 N.W.2d 817 (1960). Therefore, Dairyland's "renewal" notice is not the cancellation notice required by Minn.Stat. §§ 65B.15, subd. 2 and 65B.16 (1982). To be effective, the notice of cancellation, whether specifically denominated as such or contained in a premium due notice, must be tested by the meaning it would reasonably convey to one who receives it. One important factor, of course, is its obviousness, but there may also be other factors.

---

1. I note the trial court did not make the memorandum a part of the order granting a summary judgment. Under our decisions, of course, the memorandum may not be referred to for the purpose of impeaching, contradicting or overcoming express findings or conclusions necessarily following from the decision. *Ross v. Duluth, M. & I.R. Railway Co.*, 207 Minn. 157, 290 N.W. 566 (1940); *Alton v. Chicago, M. & St. P. Railway Co.*, 107 Minn. 457, 120 N.W. 749 (1909); *Holland v. Great Northern Railway Co.*, 93 Minn. 373, 101 N.W. 608 (1904). However, whether or not expressly made a part of the order, the memorandum may be referred to for the purpose of throwing light upon or explaining a decision. *Kleidon v. Glascock*, 215 Minn. 417, 10 N.W.2d 394 (1943); *Ross v. Duluth, M. & I.R. Railway Co.*, 207 Minn. 157, 290 N.W. 566 (1940). My examination of the order and the memorandum leads me to the conclusion that the memorandum in no way impeaches, contradicts or overcomes conclusions necessarily following from the court's order granting summary judgment. It appears more akin to a finding that Dairyland did not comply with the cancellation provisions of Minn.Stat. § 65B.15 (1982).