Paul SHOOPMAN, Petitioner,

v.

CLAY TOWNSHIP ASSESSOR,
Respondent.

No. 49T10–0209–TA–113.

Tax Court of Indiana.

May 18, 2005.

Larry J. Stroble, Dana L. Luetzelschwab, Randal J. Kaltenmark, Barnes & Thornburg LLP, Douglas J. Deglopper, Attorney at Law, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Paul Shoopman (Shoopman) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing his real property for the March 1, 1995 assessment date. On appeal, Shoopman argues that the Indiana Board erred in: 1) assigning an "A + 6" grade factor to his home; 2) assigning an "excellent" rating to his "homesite" land; and 3) valuing his residual acreage as "residential excess." [1]

## FACTS AND PROCEDURAL HISTORY

Shoopman owns 102.9 acres of land in Hamilton County, Indiana. Situated on that land is Shoopman's home (complete with an indoor swimming pool, movie theatre, and bowling alley), a boathouse, and several barns.

For the 1995 general reassessment, the Hamilton County Board of Review (BOR) assigned Shoopman's property an overall true tax value of $2,140,300 ($734,000 for land and $1,406,300 for improvements). In arriving at this value, the BOR assigned Shoopman's home a grade factor of

---

1. Shoopman also initially claimed that the Indiana Board erred in assigning his neighborhood an "excellent" rating. Shoopman, however, subsequently withdrew this issue. (*See* Pet'r Br. at 20; Oral Argument Tr. at 8.)

"A+6." The BOR also designated one acre of land as "homesite" and rated it "excellent," which carried a value of $115,000. The BOR then designated the remaining land as "residential excess" and valued it at a base rate of $10,000 per acre.[2]

Believing the assessment to be too high, Shoopman timely filed a Petition for Review of Assessment (Form 131) with the State Board of Tax Commissioners (State Board). In his Form 131, Shoopman claimed that his home should be graded "A+1," that his homesite land should be rated "good" (and therefore valued at $30,000), and his residual acreage should be priced as agricultural acreage (i.e., $495 per acre). On March 11, 1998, Leon Lane (Lane), a State Board Hearing Officer, conducted a hearing on Shoopman's appeal. On March 13, 1998, Lane conducted a site inspection of Shoopman's property. Based on his inspection, Lane made the following recommendations to the State Board:

> After inspecting the [house] and considering [the assessment regulations] ... [i]t is determined the grade is best described as A+1. A change [should be] made as a result of this issue.

> \*     \*     \*     \*     \*     \*

> After inspecting the property and surrounding properties, it is determined the homesite category is excessive and [should be] reduced to a good rating[.] A change in the assessment [should be] made due to this issue.

After inspecting the parcel, and surrounding parcels, and considering [Shoopman's] issue and [the assessment regulations], it is determined the land should be valued using the agricultural land assessment formula. A change [should be] made as a result of this issue.

(Joint Stipulation of Supplement to Cert. Admin. R. at Ex. B.)

On August 7, 2002, the Indiana Board issued a final determination on Shoopman's appeal. In its final determination, the Indiana Board rejected Lane's recommendations and upheld the BOR's assessment.[3]

Shoopman initiated this original tax appeal on September 23, 2002. On December 7, 2004, Shoopman filed his written brief with the Court; the Assessor filed her response brief on February 7, 2005. In her brief, however, the Assessor did not respond to Shoopman's arguments; rather, she asked this Court to dismiss Shoopman's appeal. The Court heard the parties' oral arguments on April 18, 2005. Additional facts will be supplied as necessary.

## STANDARD REVIEW

▮    This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Village Prop. Co., LLP v. Indiana Bd. of Tax Review,* 779 N.E.2d 986, 988 (Ind. Tax Ct.2002), *review denied.* Consequently, the Court will reverse a fi-

---

**2.** It appears from the administrative record, however, that approximately 71 of these acres received negative influence factors, ranging from 25% to 75%. (*See* Cert. Admin. R. at 91.) *See also* Ind. Admin. Code tit. 50, r. 2.2–4–10(a)(9) (1996).

**3.** On December 31, 2001, the legislature abolished the State Board of Tax Commissioners (State Board). 2001 Ind. Acts 198

§ 119(b)(2). Effective January 1, 2002, the legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. Ind.Code Ann. §§ 6–1.5–1–3; 6–1.5–4–1 (West Supp.2004–2005); 2001 Ind. Acts 198 § 95. Thus, when the final determination was issued on Shoopman's appeal in August 2002, it was issued by the Indiana Board.

nal determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2005).

■ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs. L.P.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). Probative evidence is evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Id.* at n. 4.

## DISCUSSION AND ANALYSIS

Before the Court reaches the merits of Shoopman's claims, it must first address the Assessor's claim that Shoopman's appeal should be dismissed. (*See* Resp't Resp. Br. at 8.) Because the Assessor alleges that Shoopman failed to timely file his petition for judicial review (*see* Resp't Resp. Br. at 4–8), the Court, for the reasons stated below, treats the Assessor's argument as one asserting that the Court lacks jurisdiction over the particular case.

■ Every action has three jurisdictional elements: 1) jurisdiction of the subject matter; 2) jurisdiction of the person; and 3) jurisdiction of the particular case. *Carroll County Rural Elec. Membership Corp. v. Indiana Dep't of State Revenue*, 733 N.E.2d 44, 47 (Ind. Tax Ct.2000). Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong. *Id.* (quotation and citation omitted). Whether a court has subject matter jurisdiction "depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute."[4] *Id.* (citation omitted) (footnote added). A judgment rendered by a court lacking subject matter jurisdiction is void and may be attacked at any time. *Foor v. Town of Hebron*, 742 N.E.2d 545, 548 (Ind.Ct.App.2001) (citation omitted). The appropriate means to challenge a court's subject matter jurisdiction is a Trial Rule 12(B)(1) motion. Ind. Trial Rule 12(B)(1).

■ In contrast, jurisdiction over a particular case refers to a court's power to hear and determine a specific case over which it has subject matter jurisdiction. *Carroll County*, 733 N.E.2d at 50 (citation omitted). Consequently, just because a court maintains subject matter jurisdiction does not necessarily mean that it has juris-

---

4. This Court has subject matter jurisdiction over all "original tax appeals." IND.CODE ANN. § 33–26–3–3 (West Supp.2004–2005). An original tax appeal is one that arises under Indiana's tax laws and is an initial appeal of a final determination made by the Indiana Department of State Revenue, the Indiana Board of Tax Review, and, in limited instances, the State Board of Tax Commissioners or the Department of Local Government Finance. *See* IND.CODE ANN. § 33–26–3–1 (West Supp 2004–2005); IND.CODE ANN. § 33–26–3–2 (West Supp.2004–2005); 2001 Ind. Acts 198 § 116.

diction over the particular case. "Whether a court has jurisdiction to hear a specific case depends upon the existence of particular facts contained within the case." *Id.* A judgment rendered by a court that lacks jurisdiction over a particular case is voidable and must be timely objected to or it is waived. *Foor,* 742 N.E.2d at 548. The appropriate means to challenge a court's jurisdiction over a particular case is a Trial Rule 12(B)(6) motion, *not* a Trial Rule 12(B)(1) motion. *See Carroll Co.,* 733 N.E.2d at 50.

In her brief, the Assessor advances the argument that, based on a series of statutory amendments and transitional rules, Shoopman was procedurally required to file his petition by April 1, 2002, but did not; accordingly, "the Court should dismiss." (*See* Resp't Resp. Br. at 4–8.) Because Indiana courts have generally held that issues involving the procedures for initiating or perfecting an appeal (whether prescribed by statute or trial rule) go to a court's jurisdiction over the particular case, the Court construes the Assessor's argument as such. *See, e.g., Greer v. State,* 685 N.E.2d 700, 702–04 (Ind.1997) (explaining that failure to timely file praecipe in a direct appeal from a criminal conviction pursuant to Indiana's Post–Conviction Rule 2(1) goes to jurisdiction of a particular case); *Browning v. Walters,* 620 N.E.2d 28, 31 (Ind.Ct.App.1993) (failure to verify complaint goes to court's jurisdiction over the particular case); *Miller Village Props. Co.,* 779 N.E.2d at 989–90 (failure to name the proper parties as respondents in an appeal deprived the court not of its subject matter jurisdiction, but of its jurisdiction over the particular case).

■ As previously stated, the issue of a court's lack of jurisdiction over a particular case must be raised "at the earliest opportunity possible" or it is waived. *Foor,* 742 N.E.2d at 549 (*quoting City of*

*Marion v. Antrobus,* 448 N.E.2d 325, 329 (Ind.Ct.App.1983)). Typically, "the earliest opportunity possible" is in a Trial Rule 12(B)(6) motion. *See id.* at 549–50. *See also Harp v. Indiana Dep't of Highways,* 585 N.E.2d 652, 659 (Ind.Ct.App.1992). In this case, however, the Assessor did not file a motion to dismiss under Trial Rule 12(B)(6). *In fact, she filed no motion whatsoever.*

■ Even if this Court were to construe the Assessor's brief as a motion to dismiss, the Assessor missed her "earliest opportunity possible" to raise the jurisdictional defect: Shoopman filed his appeal in September, 2002 and the Assessor did not raise this issue until she filed her brief in February, 2005. Nevertheless, in December of 2003, counsel for the Assessor moved to dismiss certain other named respondents because they were not proper parties to the appeal. The Court concludes that that was the "earliest opportunity possible" for the Assessor to challenge the Court's jurisdiction over the case. *See Foor,* 742 N.E.2d at 550. Her failure to do so waived the issue; as a result, the Court now turns to the merits of Shoopman's case.

■ On appeal, Shoopman alleges that the Indiana Board erroneously graded his home, erroneously rated his homesite land, and erroneously valued his residual acreage. The Assessor, on the other hand, has chosen not to respond *at all* to these arguments, arguing instead the jurisdictional defect issue only. The Assessor's failure to respond to Shoopman's issues is akin to failure to file a brief. *See Hacker v. Holland,* 575 N.E.2d 675, 676 (Ind.Ct.App. 1991) ("[a]n appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief"), *trans. denied.* Accordingly, the Indiana Board's final determination is subject to reversal upon

Shoopman's showing of prima facie error on these issues. *See id.*

"Prima facie means at first sight, on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." *Harrington v. Hartman,* 142 Ind.App. 87, 233 N.E.2d 189, 191 (Ind.Ct. App.1968) (internal quotation and citation omitted). "This standard prevents two evils that would otherwise undermine the judicial process. By requiring the [petitioner] to show some error, [ ] the court, not the parties, decides the law. By allowing the [petitioner] to prevail upon a showing simply of prima facie error, [the Court] avoid[s] the improper burden of having to act as advocate for the absent [respondent]." *Vukovich v. Coleman,* 789 N.E.2d 520, 524 n. 4 (Ind.Ct.App.2003).

Shoopman argues in his brief that the Indiana Board ignored the recommendations of its hearing officer, Leon Lane, in direct contravention of Indiana Code § 6-1.1-30-12. (Pet'r Br. at 11-15.) That statute provides, in pertinent part:

> With respect to ... a hearing conducted by a hearing officer under section 11 of this chapter, the ... hearing officer shall submit a written report of his find-ings to the state board of tax commissioners.... After reviewing the report, the board may take additional evidence or hold additional hearings. The board shall base its final decision on the report, any additional evidence taken by the board, and any records that the board considers relevant.

IND.CODE ANN. § 6-1.1-30-12 (West 1998). *See also* 2001 Ind. Acts 198 § 117(c).[5] The Court holds this constitutes a prima facie showing of error.

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination is RE-VERSED. The matter is REMANDED to the Indiana Board to instruct the appropriate local assessing officials to, with respect to Shoopman's March 1, 1995 assessment, reduce the grade on his home to "A+1," rate his homesite land as "good" and value it accordingly, and to value his remaining acreage as agricultural land.

---

5. This provision makes Indiana Code § 6-1.1-30-12 applicable to the Indiana Board:

> Petitions for review filed under IC 6-1.1-15-3 with respect to notices of action of the county property tax assessment board of appeals issued before January 1, 2002, that are pending before the state board of tax commissioners on December 31, 2001:
>
> (1) are transferred to the Indiana board of tax review; and

> (2) are subject to the law in effect before amendments under this act.
>
> The state board of tax commissioners shall transfer to the Indiana board of tax review by January 1, 2002, the records relating to each petition for review referred to in this subsection.

2001 Ind. Acts 198 § 117(c).