**U–HAUL CO. OF INDIANA, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0603–TA–20.

Tax Court of Indiana.

Nov. 25, 2008.

Mark J. Richards, Barton T. Sprunger, Ice Miller LLP, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

U–Haul Company of Indiana, Inc. (U–Haul Indiana) has challenged the final determination of the Indiana Department of State Revenue (Department) assessing it with an additional gross income tax liability for the tax years ending March 31, 1999, March 31, 2000, and March 31, 2001 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. While the parties have raised several issues, the Court finds the following to be dispositive:

I. Whether the Department timely mailed its proposed assessment to U–Haul Indiana for the year ending March 31, 1999 (the 1999 tax year); and

II. Whether the Department's retroactive imposition of gross income tax, based on its admitted change in interpretation of that tax, was proper.

## FACTS AND PROCEDURAL HISTORY

The U–Haul Rental System (U–Haul System), rents assorted moving equipment to the public for use throughout the United States and Canada. (Pet'r Designation of Evidence (hereinafter, Pet'r Des'g Evid.) Ex. 1 ¶¶ 4, 8.) *See also U–Haul Co. of Ind., Inc. v. Indiana Dep't of State Revenue (U–Haul I)*, 784 N.E.2d 1078, 1079–80 (Ind. Tax Ct.2002). The U–Haul System is composed of four groups: (1) Fleet Owners, (2) Rental Companies, (3) Rental Dealers, and (4) U–Haul International (UHI). These groups are bound together through a series of contractual relationships, with UHI controlling the form, terms, and conditions of each contract.

The Fleet Owners own and supply the moving equipment to the U–Haul System for rental purposes. The Fleet Owners entrust their equipment to the U–Haul System in exchange for a percentage of the gross rental income collected by the Rental Dealers from the public.

The Rental Companies merchandise and supervise the maintenance and repair of the rental equipment. The Rental Companies are responsible for establishing and servicing Rental Dealers for the U–Haul System in territories assigned to them by UHI. The Rental Companies receive a percentage of the gross rental income collected by Rental Dealers located in their territories.

The Rental Dealers are the local business entities that display and rent the moving equipment to the public. The Rental Dealers make weekly deposits of all rental income collected from the public to a depository bank account belonging to UHI. Rental Dealers also receive a percentage of the gross rental income they collect from the public upon the leasing of the moving equipment.

UHI provides clearinghouse, accounting, computer, management analysis, and other services to the U–Haul System in accor-

dance with its contracts with the Fleet Owners and the Rental Companies. In addition, UHI is responsible for distributing the contractual percentages of the gross rental income collected by the Rental Dealers to the other members of the U–Haul System.

U–Haul Indiana is an Indiana corporation that functions as a Rental Company within the U–Haul System. For each of the years at issue, U–Haul Indiana timely filed consolidated gross income tax returns, which reported its gross income tax liability along with that of U–Haul Leasing and Sales Company (U–Haul Leasing) and one other member of the U–Haul System.[1] U–Haul Indiana's return reported that U–Haul Leasing's gross income tax liability was zero based upon a Letter of Findings issued by the Department to U–Haul Leasing on March 26, 1986 (1986 LOF). (*See* Pet'r Des'g Evid. Ex. E.)[2]

After auditing U–Haul Indiana, the Department concluded that U–Haul Leasing actually owed gross income tax for the years at issue. As a result, the Department assessed U–Haul Indiana with additional gross income tax liabilities (including interest and penalties) for each of those years.[3] On April 21, 2003, U–Haul Indiana protested the assessments. On February 17, 2006, the Department issued a Letter of Findings (2006 LOF) affirming the assessments but waiving the penalties.

On March 9, 2006, U–Haul Indiana initiated an original tax appeal. U–Haul Indiana filed a motion for summary judgment on January 9, 2007. The Department filed a cross-motion for summary judgment on April 2, 2007. The Court conducted a hearing on the parties' motions on June 8, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ Summary judgment is only proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing a motion for summary judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the nonmoving party. *See Scott Oil Co. v. Indiana Dep't of State Revenue*, 584 N.E.2d 1127, 1128–29 (Ind. Tax Ct.1992) (citation omitted). Consequently, if there is any doubt as to what conclusion the Court could reach, then the Court will conclude that summary judgment is improper, given that it is neither a substitute for trial nor a means for resolving factual disputes or conflicting inferences following from undisputed facts. *See Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001) (citations omitted); *Scott Oil*, 584 N.E.2d at 1128 (citations omitted). Cross-motions for summary judgment do not alter this standard. *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.*

## DISCUSSION AND ORDER

I. **Whether the Department timely mailed the proposed assessment for the 1999 tax year to U–Haul Indiana**

During the 1999 tax year, Indiana Code § 6–8.1–5–2 established the statute of limi-

---

1. U–Haul Leasing, a Nevada corporation, is a Fleet Owner within the U–Haul System. (*See* Pet'r Designation of Evidence (hereinafter, Pet'r Des'g Evid.) Ex. 1 ¶ 6.)

2. U–Haul Leasing was formerly known as Amerco Lease Company. (Pet'r Des'g of Evid. Ex. 1 ¶ 6.)

3. The Department assessed U–Haul Indiana with the following amounts: $230,236.15 for 1999, $253,969.62 for 2000, and $251,622.42 for 2001. (*See* Pet'r Des'g Evid. Exs. J, K, M.)

tations for issuing proposed assessments for the collection of unpaid tax. That statute, in relevant part, provided that "the [D]epartment may not issue a proposed assessment ... more than three (3) years after the latest of the date the return is filed[ ] or ... the due date of the return[.]" IND.CODE ANN. § 6–8.1–5–2(a)(1) (West 1999). The parties do not dispute that U–Haul Indiana filed its tax return for the 1999 tax year on or before January 15, 2000. Thus, the Department was required to send its proposed assessment with respect to the additional 1999 liability (1999 proposed assessment) to U–Haul Indiana on or before January 15, 2003. *See id. See also* IND.CODE ANN. § 6–8.1–5–1(a) (West 1999).

■ U–Haul Indiana claims that the Department has failed to meet this requirement. (*See* Pet'r Br. in Supp. of [its] Mot. for Summ. J. (hereinafter, Pet'r Br.) at 40–45.) To support its claim, U–Haul Indiana offered the affidavit of George R. Olds, the Senior Assistant General Counsel of U–Haul Indiana. (*See* Pet'r Des'g Evid. Ex. 1.) Mr. Olds averred that, in late February 2003, U–Haul Indiana received an Audit Report explaining the additional tax liability for each of the years at issue and the proposed assessments for the tax years ending March 31, 2000 and March 31, 2001 (the 2000 and 2001 tax years). (Pet'r Des'g Evid. Ex. 1 ¶¶ 22–23.) Mr. Olds explained that when U–Haul Indiana had not received a proposed assessment for the 1999 tax year by April 21, 2003, it filed a protest as to the 2000 and 2001 tax years only. (Pet'r Des'g Evid. Ex. 1 ¶ 24.) In fact, Mr. Olds averred that U–Haul Indiana neither received, nor was aware

of, the 1999 proposed assessment until it was "furnished" with a copy of that assessment in August 2005. (Pet'r Des'g Evid. Ex. 1 ¶¶ 24–25.)

U–Haul Indiana's designated evidence prima facie[4] raises a rebuttable presumption as to the Department's non-mailing of the 1999 proposed assessment. (*See* Pet'r Des'g Evid. Ex. 1 ¶¶ 22–25.) *See also American Family Ins. Group v. Ford,* 155 Ind.App. 573, 293 N.E.2d 524, 526–27 (1973) (explaining that evidence indicating that a letter was not received raises the rebuttable presumption of non-mailing). Nevertheless, the Department's designated evidence regarding its conformance with its routine business practices has rebutted that presumption. *But see KLR Inc. v. Indiana Unemployment Ins. Review Bd.,* 858 N.E.2d 115, 118–19 (Ind.Ct. App.2006) (explaining that evidence of non-receipt of a mailing can rebut the presumption of mailing).

More specifically, the Department has submitted the depositions of Lisa Lafferty, Davetta Ploughe, and Beverly Hendy and Ms. Lafferty's affidavit. (*See* Resp't Designation of Evidence (hereinafter Resp't Des'g Evid.) Exs. 4, 6; Pet'r Des'g Evid. Exs. 5–6.) All three women, who were directly involved with the processing of U–Haul Indiana's 1999 proposed assessment, testified as to what the Department's normal business practices were regarding the mailing of proposed assessments to taxpayers. Ms. Ploughe explained that when a proposed assessment is printed, its print date is usually different from its issuance date because the Department's computer system automatically assigns each assess-

---

4.  " 'Prima facie means at first sight, on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary.' " *Shoopman v. Clay Twp. Assessor,* 827 N.E.2d 662, 667 (Ind. Tax Ct.2005) (quoting *Harrington v. Hartman,* 142 Ind.App. 87, 233 N.E.2d 189, 191 (1968)), *aff'd sub nom. Packard v. Shoopman,* 852 N.E.2d 927 (Ind. 2006).

ment with an issuance date that is three to seven days beyond its print date. (Pet'r Des'g Evid. Ex. 5 at 14:8–12.) After the proposed assessment is printed, a copy of the original is made and is placed in the taxpayer's file. (Pet'r Des'g Evid. Ex. 5 at 21:19–25, 22:1, 41.) The proposed assessment is then mailed. (Pet'r Des'g Evid. Ex. 5 at 14:17–22.) While the Department generally mails the Audit Report along with the proposed assessment to taxpayers, it deviates from this practice (i.e., it will mail the proposed assessment only) when the statute of limitations for mailing the assessment is near expiration. (Pet'r Des'g Evid. Ex. 5 at 8:17–25, 9:1–13.) If a proposed assessment is returned to the Department in the mail, a notation of that fact is entered into its computer records. (Pet'r Des'g Evid. Ex. 5 at 14:23–25, 15:1–7.)

In turn, Ms. Lafferty, the auditor assigned to U–Haul Indiana's case, averred that before U–Haul Indiana's 1999 proposed assessment was printed, she reviewed a draft of the Audit Report with Robert Pelaez, the Director of Taxation at U–Haul Indiana. (Resp't Des'g Evid. Ex. 4 ¶¶ 3–14, Ex. 6 at 15:7–25, Ex. 7.) Ms. Ploughe explained that U–Haul Indiana's 1999 proposed assessment was printed on December 19, 2002, and bore an issuance date of December 23, 2002. (Pet'r Des'g Evid. Ex. 5 at 14:2–16, 17:7–16.) Furthermore, Ms. Hendy, the person responsible for mailing the 1999 proposed assessment, made a copy of the original and placed it in U–Haul Indiana's file. (Pet'r Des'g of Evid. Ex. 6 at 5:14–24, 6:19–21.) Although Ms. Hendy did not recall actually placing the 1999 proposed assessment in the mail, she indicated that she must have because she had a copy of that assessment in her files and it was not returned in the mail.

(Pet'r Des'g Evid. Ex. 6 at 5:18–24, 6:19–21.) Finally, there was no notation in the Department's computer records indicating that the 1999 proposed assessment was returned to the Department in the mail. (Pet'r Des'g Evid. Ex. 5 at 14:24–25, 15:1–20; Ex. 6 at 5:18–24.)

Evidence of the routine practice of an organization is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice. See Ind. Evidence Rule 406. See also, e.g., Morphew v. State, 672 N.E.2d 461, 463–64 (Ind.Ct.App.1996) (finding that the Indiana Bureau of Motor Vehicles' evidence of its routine business practices could have led a jury to reasonably conclude that it timely mailed notice of a suspension of driving privileges to a defendant), trans. denied. The Court therefore finds and concludes that the Department's designated evidence leads to the reasonable inference that it timely mailed the 1999 proposed assessment. Accordingly, the issue as to whether the 1999 proposed assessment was timely mailed to U–Haul Indiana is reserved for trial.

## II. Whether the Department's retroactive imposition of gross income tax, based on its admitted change in interpretation of that tax, was proper

During the 2000 and 2001 tax years, Indiana Code § 6–8.1–3–3 provided that "[n]o change in the [D]epartment's interpretation of a listed tax[5] may take effect before the date the change is . . . adopted in a rule . . . or published in the Indiana Register . . . if the change would increase a taxpayer's liability for a listed tax." IND. CODE ANN. § 6–8.1–3–3(b) (West 2000) (footnote added). This, however, is exactly what U–Haul Indiana contends that the Department has done when it determined

---

5. During the 2000 and 2001 tax years, the gross income tax was a listed tax. See IND.

CODE ANN. § 6–8.1–1–1 (West 2000) (amended 2002).

in its 2006 LOF that U–Haul Leasing was subject to gross income tax. More specifically, U–Haul Indiana explains that although U–Haul Leasing's business activities have not changed in any material way since 1986, the Department's 2006 LOF is in direct opposition to its 1986 LOF which concluded that U–Haul Leasing was not subject to gross income tax. (Pet'r Br. at 16–24). (*See also* Pet'r Des'g Evid. Exs. E, N.)

The Department admits that it has changed its position regarding the interpretation of a listed tax in this case. (Resp't Br. in Resp. to [Pet'r Br.] (hereinafter, Resp't Br.) at 8; Pet'r Des'g Evid. Ex. 4 at 5.) Nevertheless, the Department claims that its change in position was permissible under the Indiana Administrative Code, which provides that:

> [t]he [D]epartment may exercise its discretion to retroactively rescind or modify rulings in the following extreme circumstances, which are not all inclusive:
>
> (A) There was a misstatement or omission of material facts[;]
>
> (B) The facts, as developed after the ruling, were materially different from the facts on which the [D]epartment based its ruling[;]
>
> (C) There was a change in the applicable statute, case law[,] or regulation[; or]
>
> (D) The taxpayer directly involved in the ruling did not act in good faith.

45 IND. ADMIN. CODE 15–3–2(d)(2) (West 2000). Specifically, the Department argues that its change in position was warranted because after the issuance of the 1986 LOF, U–Haul Indiana omitted a material fact and asserted materially different facts. (Resp't Br. at 5–10.) Alternatively, the Department argues that a change in the applicable case law warranted its change in position. (Resp't Br. at 10–11.)

The Court will address each of the Department's arguments in turn.

## A. Omission of a Material Fact and Assertion of Materially Different Facts

■ According to the Department, it correctly determined that U–Haul Leasing was subject to gross income tax in its 2006 LOF because, for purposes of the 1986 LOF, U–Haul Indiana had withheld the fact that the Rental Companies were agents of UHI for over twenty years. (Resp't Br. at 5–9.) The Department claims that U–Haul Indiana did not disclose that fact until 2004. (Resp't Br. at 8.) To support its claim, the Department argues that the lack of reference to any agency relationship in five Letters of Findings ranging from 1980 to 1997 demonstrated that U–Haul Indiana had withheld that fact. (*See* Resp't Br. at 5–8; Resp't Des'g Evid. Exs. 1–3; Pet'r Des'g Evid. Ex. E.) The Department maintains that when U–Haul Indiana disclosed the agency relationship in 2004, it asserted materially different facts, which "changed the role of the players in the U–Haul System in such a way as to warrant" the revocation of the 1986 LOF and the retroactive assessment of gross income tax. (Resp't Br. at 10.) The Court disagrees.

U–Haul Indiana has presented the Supplemental Affidavit of George R. Olds, a letter dated November 19, 1979 (the 1979 Letter), and a letter dated November 14, 1996 (the 1996 Letter). Mr. Olds averred that the both of the letters were true and accurate copies of the letters U–Haul Indiana sent to the Department during the course of the administrative proceedings, which resulted in the issuance of the Letters of Findings dated April 4, 1980 and December 31, 1996. (Supplemental Aff. of George R. Olds (hereinafter, Olds Supp. Aff.) ¶¶ 3–4, Ex. A; Resp't Des'g Evid. Exs. 1–2.) The 1979 Letter clearly dem-

onstrates that U–Haul Indiana disclosed the agency relationship between the Rental Companies and UHI over twenty-seven years ago. (*See* Olds Supp. Aff. Ex. A at 13–21.) Indeed, that relationship was discussed in the 1979 Letter "for almost 8? single-spaced typewritten pages[.]" (Pet'r Resp. Br. at 4; Olds Supp. Aff. Ex. A at 13–21.) [6]

The fact that the Letters of Findings made no reference to that relationship suggests that the Department, rather than U–Haul Indiana, omitted those facts.[7] Accordingly, the Court concludes that the Department's change in position and retroactive imposition of gross income tax based upon those theories was improper.

### B. Change in the Applicable Case Law

■ The Department also claims that its change in position was proper because after it issued the 1986 LOF, the relevant case law changed. (Resp't Br. at 10–11.) More specifically, the Department argues that *First National Leasing and Financial Corporation v. Indiana Department of State Revenue*, 598 N.E.2d 640 (Ind. Tax Ct.1992), required the Department to change its focus from the location of the taxpayer to the location of the critical

transaction when determining whether a taxpayer has a tax situs within the state. (Resp't Br. at 10.) The Department explains that in changing its focus to the critical transaction in this case—the rental of moving equipment—it became apparent that U–Haul Leasing was subject to gross income tax. (Resp't Br. at 11.) Again, however, the Court must disagree.

Indiana law prior to *First National Leasing* required the Department to focus upon the location of the critical transaction—the activity giving rise to the income—as opposed to the location of the taxpayer when it sought to assess a nonresident taxpayer with gross income tax. *See generally Mueller Brass Co. v. Gross Income Tax Division*, 255 Ind. 514, 265 N.E.2d 704 (1971); *Gross Income Tax Division v. Bartlett*, 228 Ind. 505, 93 N.E.2d 174 (1950); *Dep't of Treasury of Ind. v. Int'l Harvester Co.*, 221 Ind. 416, 47 N.E.2d 150 (1943), *aff'd by* 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944). *See also First Nat'l Leasing and Fin. Corp. v. Indiana Dep't of State Revenue*, 598 N.E.2d 640, 643 (Ind. Tax Ct.1992) (noting that the Department's regulations also focused upon the location of the critical transaction). Thus, *First National Leasing* did not change Indiana law.[8]

---

6. Furthermore, U–Haul Indiana reminded the Department of that relationship over ten years ago in the 1996 Letter. (Pet'r Resp. Br. at 5–6; Supplemental Aff. of George R. Olds Ex. B at 4.)

7. Counsel for the Department has also argued that the Department could change its interpretation of a listed tax and retroactively assess the tax whenever a material fact was omitted from a Letter of Findings regardless of who omitted that fact. (Hr'g Tr. at 34.) The Court, however, is not persuaded as other subsections of that regulation indicate that such a construction is overly broad. *See generally* 45 IND. ADMIN. CODE 15–3–2(d), (e) (West 2000) (indicating that Departmental rulings are binding when "all of the facts described

in obtaining the ruling are true and accurate"). *See also Will's Far–Go Coach Sales v. Nusbaum*, 847 N.E.2d 1074, 1078 (Ind. Tax Ct.2006) (stating that "the Court presumes that [an] administrative agency intends for the Court to apply regulations in a logical manner, so as to prevent an unjust or absurd result") (citation omitted).

8. In its 2006 LOF and its brief filed with this Court, the Department has also claimed that *U–Haul Company of Indiana, Inc. v. Indiana Dep't of State Revenue (U–Haul I)*, 784 N.E.2d 1078, 1080 (Ind. Tax Ct.2002) and *U–Haul International, Inc. v. Indiana Department of State Revenue*, 826 N.E.2d 713 (Ind. Tax Ct.2005), *review denied*, constituted changes in case law that "justified" its change in posi-

The Court therefore concludes that this theory does not support the Department's change in position and retroactive imposition of gross income tax.[9]  Accordingly, U–Haul Indiana's motion for summary judgment as to this issue is GRANTED.

## CONCLUSION

For the above stated reasons, the Court DENIES U–Haul Indiana's motion for summary judgment as to Issue I.  As a result, the issue of whether the Department timely mailed the 1999 proposed assessment is reserved for trial.  The Court, however, GRANTS U–Haul Indiana's mo-

tion for summary judgment as to Issue II. The Department's cross-motion for summary judgment is therefore DENIED. The Court shall set a case management conference to discuss the remaining matters for trial by separate order.

SO ORDERED.

tion and retroactive imposition of gross income tax.  (*See* Resp't Br. in Resp. to [Pet'r Br.] (hereinafter, Resp't Br.) at 11;  Pet'r Des'g Evid. Ex. N at 6–7.)  Even assuming, *arguendo,* that those cases changed the law with respect to U–Haul Leasing, the Indiana Administrative Code does not support the Department's claim.  *See* 45 I.A.C. 15–3–2(d)(2) (providing that "[t]axpayers are *cautioned* that ... final decisions of ... [the] Indiana Tax Court [ ] are *notification* to the taxpayer of a *possible* revocation of a ruling, *effective from the date of the court decision*") (emphases added).

9.  The Department also appears to argue that the 1986 LOF was rendered null and void by Tax Policy Directive No. 9 (Directive), which

states that "all rulings issued by the Department prior to January 1, 1990 are hereby declared null and void and of no effect for tax years beginning after December 31, 1995." (Resp't Br. at 11–12;  Resp't Des'g Evid. at Ex. 5.)  That Directive, however, is merely advisory, given that it was not adopted in conformity with the rulemaking procedures set out in Indiana Code §§ 6–8.1–3–3 and 4–22–2 et seq.  Therefore, the Directive, unlike a properly adopted regulation, does not have the force of law.  *See Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue,* 569 N.E.2d 765, 767 n. 2 (Ind. Tax Ct.1991) (citing *Economy Oil Corp. v. Indiana Dep't of State Revenue,* 162 Ind.App. 658, 321 N.E.2d 215, 221 (1974)), *aff'd by* 587 N.E.2d 1311 (Ind.1992).